751 N.W.2d 135 (2008)
275 Neb. 951
NEW TEK MANUFACTURING, INC., a Nebraska corporation, appellant,
v.
John A. BEEHNER et al., appellees.
No. S-06-783.
Supreme Court of Nebraska.
June 27, 2008.
*139 Roger P. Cox and Gregory D. Barton, Lincoln, of Harding & Shultz, P.C., L.L.O., and Roger D. Greer and Steven P. Fallon, Chicago, IL, of Greer, Burns & Crain, Ltd., for appellant.
William H. Selde, of Sodoro, Daly & Sodoro, P.C., Omaha, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*136 STEPHAN, J.
This case is before us for the second time. It is a professional negligence action in which the plaintiff's damage claim is dependent upon the resolution of a hypothetical third-party patent infringement claim. New Tek Manufacturing, Inc. (New Tek), alleged that its former attorney, the late John H. Beehner, negligently allowed its patent on a device to lapse and that it was damaged when a third party, Orthman Manufacturing, Inc., manufactured and sold a device which would have infringed upon the patent under the doctrine of equivalents had the patent remained in effect. In New Tek Mfg. v. Beehner (New Tek I),[1] we reversed a summary judgment entered in favor of Beehner's estate (the Estate) and remanded the cause to the district court for Douglas County for further proceedings, based upon our determination that the estate had not presented a prima facie case of noninfringement under the doctrine of equivalents. Following remand, the district court again entered summary judgment in favor of the estate, determining as a matter of law that the all-elements rule and prosecution history estoppel precluded the application of the doctrine of equivalents. We conclude that the district court did not err in determining that prosecution history estoppel would have barred the hypothetical patent infringement case and, therefore, affirm.

I. BACKGROUND

1. FACTS AND PROCEDURAL HISTORY
We set forth the following summary of pertinent facts and procedural history in New Tek I:
The patented device at issue in this case is a "row following guidance device *140 for a tractor-drawn row crop implement," designed to help operators of farm equipment guide implements through a crop field without accidentally deviating from the crop row and destroying planted crops. As the patent explains, tractor-drawn farm implements may carry groundworking tools spaced as close as 4 inches apart, and a tractor operator is generally situated in a cab located several feet above and forward of the implement, so it can be difficult to view the actual engagement of the tools with the ground. In an operation such as cultivating, only a slight misalignment of the tractor with the crop row may cause the implement to uproot several rows.
The patented device was intended, generally, to be a "row following guidance device" that connects the left and right sides of the forward end of an implement to the tractor, and adjusts the length of each left and right connection so that the implement will follow a crop row independently, even if the tractor deviates from the crop row. A wheel, following the crop row, signals a steering valve upon any deviation from the alignment of the implement with the crop row, and the steering valve corrects the deviation by lengthening one of the connections between the implement and the tractor and shortening the other connection.
Eugene Schmidt invented this "row following guidance device" and assigned his rights to Sunco Systems, Inc. (Sunco). A patent application was filed with the U.S. Patent and Trademark Office (the Patent Office) on April 24, 1985, and patent No. 4,640,365 (the '365 patent) was issued on February 3, 1987. After Schmidt saw a potentially infringing device at a farm equipment show, Sunco decided to broaden the patent by filing a reissue patent application on December 14, 1987.
In 1988, while the reissue patent application was pending, Sunco's counsel retired from the practice of law and recommended that Sunco retain Beehner. In 1989, New Tek was formed to assemble farm equipment based on Sunco parts, and the rights for the '365 patent and the reissue patent application were assigned to New Tek.
For purposes of this appeal, New Tek's allegations of Beehner's duties, and breach thereof, are not at issue. New Tek alleged that Beehner was responsible for pursuing the reissue patent application and maintaining the '365 patent, in part by ensuring that the maintenance fees for the '365 patent were filed. However, Beehner did not diligently prosecute the reissue patent application, nor did he pay the maintenance fees for the '365 patent, which became due in August 1990. Beehner revived the reissue patent application pursuant to a petition filed on December 18, 1990, but did not take action with respect to the '365 maintenance fee before the end of the maintenance fee grace period, which expired on February 3, 1991. Although this resulted in the expiration of the '365 patent and rendered the reissue patent application defective, Beehner continued prosecution of the reissue patent application. Eventually, New Tek lost patience with Beehner's prosecution of the reissue patent application and retained new counsel.
The reissue patent application was eventually allowed, and reissue patent No. 34,080 (the '080 patent) was issued on September 29, 1992. However, the '080 patent was defective because of the expiration of the '365 patent, of which New Tek was still unaware. On November 16, 1994, New Tek's counsel submitted the maintenance fee for the '080 *141 patent to the Patent Office but, on December 19, was informed that the maintenance fee would not be accepted because the '080 patent had expired due to the failure to timely pay the maintenance fee for the '365 patent.
Ultimately, the Patent Office accepted New Tek's petition for late payment of the '365 maintenance fee, and the '365 patent was revived. However, New Tek lost the benefit of the expanded scope of the '080 patent  specifically, claim 22 of the '080 patent, which was not contained in the '365 patent, and will be explained in more detail below. Furthermore, the revival of the '365 patent did not afford New Tek protection from infringing uses that began between the expiration of the patent and the acceptance of the late maintenance fee.[2] ...
New Tek filed suit against Beehner and his law office in the district court on December 12, 1995, alleging professional negligence. Beehner died during the pendency of the suit, and [the El state was substituted.... After proceedings unrelated to the issues presented in this appeal, the district court held a "Markman hearing" pursuant to Markman v. Westview Instruments, Inc.[3] ... and entered an order construing the '080 patent for purposes of this litigation.
The [Estate] then filed a motion for summary judgment, which the court sustained. The parties had narrowed their inquiry to a particular device made by Orthman Manufacturing, Inc. (the Orthman device). The court determined as a matter of law that the Orthman device would not have been found to infringe on the '080 patent.... New Tek's claim was dismissed to the extent that it relied on allegations of hypothetical third-party infringement on the '080 patent, and New Tek voluntarily dismissed its remaining claims so that it could proceed with this appeal on the issue of infringement.[4]

2. NEW TEK I

In New Tek I, we first rejected the Estate's contention that we lacked subject matter jurisdiction. We concluded that the case did not arise under federal patent law within the meaning of 28 U.S.C. § 1338(a) (2000), but, rather, was a professional negligence action arising entirely under state law. We noted that "the precise question is not whether Orthman Manufacturing infringed on the '080 patent," but, rather, "whether, absent Beehner's negligence, New Tek would have been successful in an infringement action against Orthman."[5]
Next, we rejected New Tek's contention that the district court erred in holding a "Markman hearing," pursuant to Markman v. Westview Instruments, Inc.,[6] for the purpose of construing the patent. We concluded that it was "well established that claim construction is a question of law *142 for a court to decide."[7] We also determined that the district court did not err in construing element 4, claim 22, of patent No. 34,080 (the '080 patent) as a means-plus-function element. And, we rejected New Tek's argument that the patent had intrinsic value recoverable even in the absence of damages resulting from the loss of a potential infringement action.
We then addressed the dispositive issue of whether the district court erred in concluding as a matter of law that New Tek could not establish infringement under the doctrine of equivalents, which doctrine prevents a copyist from evading patent claims with insubstantial changes.[8] We stated that "[t]he doctrine of equivalents does not require a one-to-one correspondence of components"[9] and that "[t]he vantage point of one of ordinary skill in the relevant art provides the perspective for assessing the substantiality of the differences between the claimed invention and the accused device."[10] We noted that the district court had
determined that a substantial difference existed and that the Orthman device did not infringe on claim 22. The court noted that claim 22 specifically described a "pivotal connection" between each hydraulic cylinder in element 4 and the elongated member and respective lever. The Orthman device, on the other hand, employs a single hydraulic cylinder, directly mounted on the elongated member without employing a pivotal connection. The court did not address whether the single hydraulic cylinder of the Orthman device was equivalent to the two hydraulic cylinders recited in claim 22 of the '080 patent; rather, the court concluded that the difference between a pivotal connection and direct mount to the end of the hydraulic cylinder on the elongated member was substantial.[11]
We concluded that determination of infringement under the doctrine of equivalents is an issue of fact and that as the party moving for summary judgment, the Estate had not met its prima facie burden to show that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. We noted that the Estate's expert provided "no ... basis for a finding of noninfringement" and that aside from the conclusory opinion of New Tek's expert that the device made by Orthman Manufacturing (the Orthman device), infringed on the '080 patent, there was
no evidence that would permit a trier of fact to conclude, one way or the other, whether one of ordinary skill in the pertinent art would consider the difference between element 4, claim 22, of the '080 patent and the corresponding structure of the Orthman device to be substantial, or whether the different structure of the Orthman device is merely an insubstantial change which adds nothing of significance to the structure disclosed in the '080 patent specification.[12]
*143 We concluded that "[t]he defect in the [Estate's] motion for summary judgment was its failure to present evidence regarding the perspective of one of ordinary skill in the relevant art."[13] We also determined that "[t]he district court erred in construing the pivotal connection as a `limitation,' instead of determining whether the structure of the Orthman device was equivalent ... to the overall structure corresponding to the function recited in element 4."[14] We therefore reversed the judgment of the district court and remanded the cause for further proceedings consistent with our opinion. We overruled the Estate's motion for rehearing and issued our mandate.

3. PROCEEDINGS ON REMAND

(a) Motion for Summary Judgment
After our mandate was entered on the record of the district court, the Estate filed another motion for summary judgment "on the issue of Non-infringement and/or damages," asserting that on the basis of the pleadings, evidence, and admissions in the record and the district court's Markman order, there was no genuine issue of material fact "as to any issue of Infringement" and that the Estate was entitled to judgment as a matter of law. At a hearing on the motion, the Estate reoffered and the court received certain evidence which was included in the New Tek I record, including the depositions of Richard L. Wood and William Orthman, prosecution history records for the '080 patent and patent No. 4,640,365 (the '365 patent), and certain drawings pertaining to the patents. Counsel for the Estate argued that the court should determine as a matter of law that the patent on the Orthman device could not have infringed upon the '080 patent because of certain limitations upon the doctrine of equivalents, including the all-elements rule, prosecution history estoppel, and the related disclosure dedication rule. In response, New Tek argued that the grounds advanced for the motion conflicted with our opinion in New Tek I and consisted of an attempt to reassert arguments unsuccessfully advanced in that case.
After the hearing, the district court on its own motion requested "affidavits regarding prosecution history estoppel limited to the patent prosecution record." The court conducted another hearing at which it received the affidavits of James L. Young, a patent attorney appearing as an expert for the Estate, and Wood, a patent attorney who served as an expert for New Tek.

(b) Order Sustaining Motion for Summary Judgment
The district court subsequently entered an order granting the Estate's motion for summary judgment. It first determined that it was not precluded from doing so by our opinion in New Tek I. It reasoned this court had concluded that the evidentiary record failed to establish a prima facie case of noninfringement under the doctrine of equivalents, but had not addressed the issues of law raised by the motion for summary judgment filed following remand; namely, whether the all-elements rule or prosecution history estoppel precluded an infringement analysis under the doctrine of equivalents. The district court determined as a matter of law that New Tek could not have prevailed on a patent infringement claim for two reasons. First, because under the all-elements rule, its theory "would vitiate the claim language in *144 New Tek's '080 patent" and, second, because prosecution history estoppel barred New Tek's attempt to recapture a purported equivalent that was disclaimed during the prosecution of its underlying '365 patent.
New Tek perfected a timely appeal from this order.

II. ASSIGNMENTS OF ERROR
New Tek assigns, consolidated and restated, that the trial court erred in (1) ignoring the law of the case established by New Tek I; (2) misapplying the all-elements rule; (3) misapplying prosecution history estoppel; (4) misapplying 35 U.S.C. § 112, ¶ 6 (2000) by not considering the full range of equivalents to which New Tek was statutorily entitled; and (5) denying New Tek a jury trial on contested issues of fact.

III. STANDARD OF REVIEW
[1,2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[15] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[16]
[3] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court.[17]

IV. ANALYSIS

1. SUBJECT MATTER JURISDICTION
[4] After this court's decision in New Tek I and the submission of briefs in the present appeal, the U.S. Court of Appeals for the Federal Circuit decided two cases that addressed the issue of whether federal jurisdiction exists under 28 U.S.C. § 1338(a) with respect to legal malpractice actions presenting issues of patent law.[18] In light of those cases, we ordered supplemental briefing from the parties to address whether Nebraska state courts have jurisdiction over the subject matter of this action. We reiterate our determination in New Tek I, that this professional malpractice case arises entirely under state law, and conclude that we do have subject matter jurisdiction over the claim.

2. DOCTRINE OF EQUIVALENTS AND ITS LIMITATIONS
[5,6] A device may infringe on a patent either literally or under the doctrine of equivalents.[19] New Tek contends that had its patent not lapsed, the Orthman device would have infringed under the doctrine of equivalents. Under this judicially created doctrine, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is `equivalence' *145 between the elements of the accused product or process and the claimed elements of the patented invention."[20] As we noted in New Tek I, the doctrine of equivalents prevents a copyist from making "unimportant and insubstantial changes and substitutions in a patent which, though adding nothing, would be enough to take the copied matter outside the claim."[21]
In reaffirming the modern viability of the doctrine of equivalents as a means of establishing patent infringement, the U.S. Supreme Court, in Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,[22] recognized the danger that broad application of the doctrine would "conflict ... with the definitional and public-notice functions of the statutory claiming requirement" under federal patent law. The Court stated that "[i]t is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."[23]
[7-11] The determination of infringement under the doctrine of equivalents is limited by two primary legal doctrines: (1) prosecution history estoppel and (2) the all-elements rule.[24] Prosecution history "constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct, such as designing around the claimed invention."[25] Prosecution history estoppel, also known as "`file wrapper estoppel.'" is a defense to infringement under which a patent holder who amends a patent application has no claim of infringement on patent claims not made in the final patent.[26] The all-elements rule prevents application of the doctrine of equivalents if applying the doctrine would vitiate an entire claim limitation.[27] According to this rule, an accused product does not infringe "unless it contains each limitation of the claim, either literally or by an equivalent."[28] Determination of both literal infringement and infringement under the doctrine of equivalents is a question of fact.[29] But the application of the legal limitations imposed by prosecution history estoppel and the all-elements rule is a question of law which an appellate court reviews de novo.[30]

*146 3. PROSECUTION HISTORY ESTOPPEL

(a) Law-of-the-Case Doctrine Inapplicable
[12-15] New Tek argues that by entering summary judgment in favor of the Estate following remand, the district court violated the law-of-the-case doctrine by ignoring our holding in New Tek I that there were genuine issues of material fact which precluded summary judgment on the record as it was then presented. Under the law-of-the-case doctrine, an appellate court's holdings on questions presented to it in reviewing the trial court's proceedings become the law of the case; those holdings conclusively settle, for the purposes of that litigation, all matters ruled upon, either expressly or by necessary implication.[31] The doctrine reflects the principle that "`"[a]n issue which has been litigated and decided in one stage of a case should not be relitigated in a later stage."'"[32] When an appellate court remands a case to an inferior tribunal, the law-of-the-case doctrine prevents that court from taking action inconsistent with the judgment of the appellate court.[33]
Our opinion in New Tek I addressed the merits of the infringement claim under the doctrine of equivalents. We did not discuss or decide the legal issue of prosecution history estoppel, which was raised for the first time following our remand in New Tek I. Accordingly, the law-of-the-case doctrine did not preclude the district court from addressing this issue.

(b) Additional Facts
[16] Certain additional facts reflected by the prosecution history files for the '365 patent and the '080 patent are pertinent to our de novo review of this issue.
Federal patent law requires an applicant to "particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention."[34] Eugene Schmidt's initial application for what became the '365 patent listed 22 separate claims for the "row following guidance device" for a tractor-drawn row crop implement. Two of these claims described "lever-pivoting means" utilized in the guidance device. Claim 3 described a lever-pivoting means which utilized a single two-way hydraulic cylinder. Claim 4 described a lever-pivoting means which consisted of two hydraulic cylinders.
Federal patent law, at 35 U.S.C. § 102(e) (1994), as then in effect, provided that a person shall be entitled to a patent unless
the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of [federal patent law] before the invention thereof by the applicant for patent[.]
The patent examiner rejected Schmidt's claim 3 under this provision "as being anticipated by" an existing patent. The examiner stated that claim 4 would be allowable if rewritten to overcome certain *147 objections not based on prior art. Finally, the examiner objected to the drawings included in the application, stating in part that "[t]he drawings must show every feature of the invention specified in the claims. Therefore, the two-way hydraulic cylinder of claim 3 must be shown or the feature should be can-celled from the claim. No new matter should be entered."
In response, Schmidt requested cancellation of claim 3 of the original application. Original claim 4, describing the two-cylinder lever-pivoting means, was incorporated into Schmidt's amended patent application as claim 1.
The two-hydraulic-cylinder limitation in the '365 patent was carried forward into claim 22 of the '080 patent. This reissue patent is the basis of New Tek's hypothetical infringement claim. In its Markman order, which we discussed but did not disturb in New Tek I, the district court construed claim 22, element 4, of the '080 patent as written in a means-plus function format with corresponding structures consisting of
a first and second hydraulic cylinder, one at each end of the elongated member, and a tie rod. Element 4 also claims that the first hydraulic cylinder must be pivotally connected at one end to the free end of the first articulated member's lever and pivotally connected at the other end to said elongated member at a point spaced away from the pivotal connection of the respective lever and elongated member. The second hydraulic cylinder must be pivotally connected at one end to said elongated member and pivotally connected at the other end to the second articulated member's lever at a point spaced away from the pivotal connection of the lever and elongated member.
(Emphasis supplied.)
The Orthman device, which New Tek alleges would have infringed on its patent but for Beehner's negligence in allowing it to lapse, claimed a "hydraulic means" consisting of "one double rod hydraulic cylinder."

(c) Resolution
[17-21] Prosecution history estoppel ensures that claims are interpreted by reference to those that were canceled or rejected during the application process.[35] Although the doctrine of equivalents protects the patent holder against "insubstantial alterations" in the patent claim, "[w]hen ... the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent."[36] Thus,
[p]rosecution history estoppel ensures that the doctrine of equivalents remains tied to its underlying purpose. Where the original application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee can-not assert that he lacked the words to describe the subject matter in question. The doctrine of equivalents is premised on language's inability to capture the essence of innovation, but a prior application describing the precise element at issue undercuts that premise. In that instance the prosecution history has established that the inventor turned his attention to the subject matter in *148 question, knew the words for both the broader and narrower claim, and affirmatively chose the latter.[37]
Put succinctly, "[p]rosecution history estoppel serves to limit the doctrine of equivalents by denying equivalents to a claim limitation whose scope was narrowed during prosecution for reasons related to patentability."[38]
[22] In this case, we focus on Schmidt's amended application for patent '365, which canceled his original claim 3 in response to the patent examiner's rejection of the original application for the '365 patent based in part upon prior art. The first question in a prosecution history estoppel inquiry is whether the literal scope of the claim has been narrowed by amendment.[39]
The district court found that Schmidt's cancellation of his original claim 3 was a narrowing amendment. New Tek argues this was an error because the amended application included a new claim specifying "a hydraulic cylinder means" and a dependent claim specifying a second hydraulic cylinder means. However, as the district court correctly noted, even if the patent were so construed, it would still not include a claim for the single two-way hydraulic cylinder described in claim 3 of the original application. We view the amendments in this case as similar to those considered in J & M Corp. v. Harley-Davidson, Inc.,[40] a case involving a patent for a device used to mount accessories to a motorcycle helmet. The patentee originally argued that its claim was broad enough to include a mounting device using either one or two clamps, but in response to an examiner's objection, it canceled the single clamp claims and substituted a claim for "'gripping means'" drafted in a means-plus-function format.[41] The device alleged to have infringed upon the patent utilized a single clamp. The court concluded that the amendment of the claims prior to the issuance of the patent narrowed the claim to dual clamp accessories and estopped the patentee from asserting infringement by the accused single clamp accessories under the doctrine of equivalents.
In this case, the single two-way hydraulic cylinder claim originally asserted as claim 3 was canceled, but the two-cylinder lever-pivoting means originally asserted as claim 4 was retained in the amended application. The drawings incorporated in the '365 patent and the '080 patent reflect only the two-cylinder means. Element 4, claim 22, of the '080 patent, as construed by the district court in its Markman order, describes only a device utilizing two hydraulic cylinders as lever-pivoting means. We conclude that the rejected claim 3 of the original application was replaced by a narrowing claim which may trigger prosecution history estoppel as a legal limitation on the doctrine of equivalents.
[23-25] The occurrence of a narrowing amendment triggers a second inquiry as to "whether the reason for that amendment was a substantial one relating to patentability."[42] Only the patent's prosecution *149 history can be a basis for such reason.[43] The record in this case clearly discloses the reason for the amendment. The examiner rejected claim 3, pursuant to 35 U.S.C. § 102(e), as being anticipated by an existing patent. In his response, Schmidt requested the cancellation of claim 3. Such a narrowing amendment made to distinguish claims from those disclosed in prior art forms the "classic basis for the application of prosecution history estoppel."[44] Patentees are "not free to ... renege on a deal struck with the [Patent Trademark Office] during patent prosecution.... When an applicant distinguishes prior art by surrendering some previously-claimed subject matter, the patentee may not later seek to recover that surrendered subject matter by the doctrine of equivalents."[45]
The final inquiry is to determine the scope of the estoppel resulting from the cancellation of claim 3 describing a leverpivoting means employing a single hydraulic cylinder. The law applicable to this determination has developed over the past 25 years. In Hughes Aircraft Co. v. United States,[46] the Court of Appeals for the Federal Circuit held that prosecution history estoppel applied as a flexible bar, such that depending on the nature and purpose of an amendment, "it may have a limiting effect within a spectrum ranging from great to small to zero."
The same court revisited this issue in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki (Festo I).[47] Concluding that the flexible bar principle announced in Hughes Aircraft Co. was "`unworkable" and seemingly inconsistent with another line of its cases, the court rejected the principle and held that "prosecution history estoppel acts as a complete bar to the application of the doctrine of equivalents when an amendment has narrowed the scope of a claim for a reason related to patentability."[48]
The U.S. Supreme Court granted certiorari and rejected the complete bar approach in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo II).[49] Noting its prior holdings that a patentee's decision to narrow claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim, the Court concluded that a patentee could nevertheless rebut this presumption by showing that a particular equivalent was "unforeseeable at the time of the application," that "the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question," or that "there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question."[50]
*150 On remand from the U.S. Supreme Court, in Festo v. Shoketsu Kinzoku Kogyo Kabushiki (Festo III),[51] the Federal Circuit provided "general guidance" with regard to the three "rebuttal criteria" specified in Festo II. It held that the foreseeability of the first rebuttal criterion should be determined by an objective standard and noted that "if the alleged equivalent were known in the prior art in the field of the invention, it certainly should have been foreseeable at the time of the amendment."[52] Noting that it could not anticipate all instances in which a narrowing amendment could be merely "tangential" to the equivalent in question, under the second rebuttal criterion, the court stated with certainty that "an amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim."[53] The court held that the third criterion "may be satisfied when there was some reason, such as the shortcomings of language, why the patentee was prevented from describing the alleged equivalent when it narrowed the claim."[54]
New Tek contends that the district court erred in applying the analytical approach announced in Festo II and refined in Festo III in reaching its conclusion that prosecution history estoppel barred any claim that the Orthman device infringed upon its patent under the doctrine of equivalents. It argues that this amounted to an impermissible retroactive application of decisional law because this suit was filed before those decisions. We are not persuaded by this argument. It is impossible to know precisely when any actual infringement action by New Tek would have been tried if the patent had not lapsed, and thus impossible to know what law would have been applied in such an action. Moreover, the Federal Circuit specifically recognized in Festo I that its "flexible bar" approach had been unworkable and inconsistent with another line of cases from the same court.[55] The opinions in Festo II and Festo III provided clarity in this unsettled area of the law, and we therefore apply those principles in our de novo review.
We conclude as a matter of law that none of the rebuttal criteria identified in Festo II and explained further in Festo III are met in this case. The first criterion is not met because it cannot be said that the claimed equivalent was unforeseeable at the time of the narrowing amendment. The claimed means consisting of a single two-way hydraulic cylinder was canceled in response to a prior art objection. As we noted in New Tek I, there is no evidence that the alleged equivalent is "after-arising technology."[56] The second criterion is not met because the amendment to claim 3 was made to avoid prior art that contained the equivalent in question, and thus it is not tangential, but is central to the allowance of the claim.[57] The third criterion is not met because the claim for the single two-way hydraulic cylinder was rejected on the basis of prior art; there can be no other reason that Schmidt could *151 not have described the accused equivalent.[58]
For these reasons, we conclude that prosecution history estoppel would have barred any patent infringement claim by New Tek against Orthman Manufacturing if the patents had remained in effect at all relevant times. Because the hypothetical infringement claim lacked merit, there is no genuine issue of material fact regarding the injury and damages allegedly sustained by New Tek as a result of Beehner's negligence, and the Estate is entitled to judgment as a matter of law.

V. CONCLUSION
We conclude that the district court did not err in determining as a matter of law that prosecution history estoppel would have barred New Tek's hypothetical patent infringement claim which is the basis for its alleged injury and damages in this professional negligence action. Because this issue is dispositive, we need not address New Tek's argument that the district court erred in concluding that the claim would also have been barred by the all-elements rule. We affirm the judgment of the district court.
AFFIRMED.
NOTES
[1] New Tek Mfg. v. Beehner, 270 Neb. 264, 702 N.W.2d 336 (2005).
[2] See 35 U.S.C. § 41(c)(2) at 754 (2000) ("[a] patent, the term of which has been maintained as a result of the acceptance of a payment of a maintenance fee ... shall not abridge or affect the right of any person ... who made, purchased, offered to sell, or used anything protected by the patent ... after the 6-month grace period but prior to the acceptance of a maintenance fee").
[3] Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.Cir.1995), affirmed 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).
[4] New Tek I, supra note 1, 270 Neb. at 267-69, 702 N.W.2d at 342-44.
[5] Id. at 272, 702 N.W.2d at 346.
[6] Markman v. Westview Instruments, Inc., supra note 3.
[7] New Tek I, supra note 1, 270 Neb. at 274, 702 N.W.2d at 347.
[8] Valmont Industries, Inc. v. Reinke Mfg. Co., Inc., 983 F.2d 1039 (Fed.Cir.1993).
[9] New Tek I, supra note 1, 270 Neb. at 281-82, 702 N.W.2d at 352. citing Wiener v. NEC Electronics, Inc., 102 F.3d 534 (Fed.Cir.1996). abrogated on other grounds, Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448 (Fed. Cir.1998).
[10] Id. at 282, 702 N.W.2d at 352, citing Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354 (Fed.Cir.2004).
[11] New Tek I, supra note 1, 270 Neb. at 282, 702 N.W.2d at 352-53.
[12] Id. at 283-84, 702 N.W.2d at 353-54. citing Ishida Co., Ltd. v. Taylor, 221 F.3d 1310 (Fed.Cir.2000).
[13] Id. at 284, 702 N.W.2d at 354, citing Lighting World, Inc. v. Birchwood Lighting, Inc., supra note 10.
[14] Id. at 284, 702 N.W.2d at 354.
[15] Nebraska Coalition for Ed. Equity v. Heineman, 273 Neb. 531, 731 N.W.2d 164 (2007).
[16] Alston v. Hormel Foods Corp., 273 Neb. 422, 730 N.W.2d 376 (2007).
[17] Coffey v. County of Otoe, 274 Neb. 796, 743 N.W.2d 632 (2008); Heinze v. Heinze, 274 Neb. 595, 742 N.W.2d 465 (2007).
[18] Air Measurement Tech. v. Akin Gump Strauss Hauer, 504 F.3d 1262 (Fed.Cir.2007); Immunocept, LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281 (Fed.Cir.2007).
[19] See, Chiuminatta Concrete Concepts v. Cardinal Industries, 145 F.3d 1303 (Fed.Cir. 1998); Valmont Industries, Inc. v. Reinke Mfg. Co., Inc., supra note 8.
[20] Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), citing Graver Mfg. Co. v. Linde Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).
[21] New Tek I, supra note 1, 270 Neb. at 280, 702 N.W.2d at 351, citing Valmont Industries, Inc. v. Reinke Mfg. Co., Inc., supra note 8.
[22] Warner-Jenkinson Co. v. Hilton Davis Chemical Co., supra note 20, 520 U.S. at 29, 117 S.Ct. 1040.
[23] Id.
[24] Seachange Intern., Inc. v. C-COR, Inc., 413 F.3d 1361 (Fed.Cir.2005); Lockheed Martin Corp. v. Space Systems/Loral, Inc., 324 F.3d 1308 (Fed.Cir.2003).
[25] Hockerson-Halberstadt v. Avia Group Intern., 222 F.3d 951, 957 (Fed.Cir.2000).
[26] Warner-Jenkinson Co. v. Hilton Davis Chemical Co., supra note 20, 520 U.S. at 30, 117 S.Ct. 1040.
[27] Seachange Intern., Inc. v. C-COR, Inc., supra note 24; Asyst Technologies, Inc. v. Emtrak, Inc., 402 F.3d 1188 (Fed.Cir.2005).
[28] Freedman Seating Co. v. American Seating Co., 420 F.3d 1350, 1358 (Fed.Cir.2005).
[29] Lockheed Martin Corp. v. Space Systems/Loral, Inc., supra note 24; Insituform Technologies v. Cat Contracting, 161 F.3d 688 (Fed.Cir.1998).
[30] Seachange Intern., Inc. v. C-COR, Inc., supra note 24; Lockheed Martin Corp. v. Space Systems/Loral, Inc., supra note 24; Bell Atlantic Network Serv. v. Covad Communications, 262 F.3d 1258 (Fed.Cir.2001).
[31] See, Money v. Tyrrell Flowers, 275 Neb. 602, 748 N.W.2d 49 (2008); Thomas v. State, 268 Neb. 594, 685 N.W.2d 66 (2004).
[32] Money v. Tyrrell Flowers, supra note 31, 275 Neb. at 613, 748 N.W.2d at 60, quoting In re Application of City of Lincoln, 243 Neb. 458, 500 N.W.2d 183 (1993).
[33] See, id.; State v. White, 257 Neb. 943, 601 N.W.2d 731 (1999).
[34] 35 U.S.C. § 112.
[35] Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002).
[36] Id., 535 U.S. at 733-34, 122 S.Ct. 1831.
[37] Id., 535 U.S. at 734-35, 122 S.Ct. 1831.
[38] Pioneer Magnetics, Inc. v. Micro Linear Corp., 330 F.3d 1352, 1356 (Fed.Cir.2003).
[39] Festo v. Shoketsu Kinzoku Kogyo Kabushiki, 344 F.3d 1359 (Fed.Cir.2003). citing Pioneer Magnetics, Inc. v. Micro Linear Corp., supra note 38.
[40] J & M Corp. v. Harley-Davidson, Inc., 269 F.3d 1360 (Fed.Cir.2001).
[41] Id. at 1364.
[42] Festo v. Shoketsu Kinzoku Kogyo Kabushiki, supra note 39, 344 F.3d at 1366.
[43] Pioneer Magnetics, Inc. v. Micro Linear Corp., supra note 38.
[44] Id. at 1357. See, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., supra note 35; Warner-Jenkinson Co. v. Hilton Davis Chemical Co., supra note 20 (cases cited therein); Exhibit Supply Co. v. Ace Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736 (1942); Keystone Co. v. Northwest Eng. Co., 294 U.S. 42, 55 S.Ct. 262, 79 L.Ed. 747 (1935).
[45] Sage Products, Inc. v. Devon Industries, Inc., 126 F.3d 1420, 1432-33 (Fed.Cir.1997) (citations omitted).
[46] Hughes Aircraft Co. v. United States, 717 F.2d 1351, 1363 (Fed.Cir.1983).
[47] Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki, 234 F.3d 558 (Fed.Cir.2000).
[48] Id. at 574, 575.
[49] Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., supra note 35.
[50] Id., 535 U.S. at 740-41, 122 S.Ct. 1831.
[51] Festo v. Shoketsu Kinzoku Kogyo Kabushiki, supra note 39, 344 F.3d at 1368-69.
[52] Id. at 1369.
[53] Id.
[54] Id.
[55] Festo I, supra note 47, 234 F.3d at 574.
[56] New Tek I, supra note 1. 270 Neb. at 281, 702 N.W.2d at 352.
[57] See Festo III, supra note 39. See, also, Pioneer Magnetics, Inc. v. Micro Linear Corp., supra note 38.
[58] See Pioneer Magnetics, Inc. v. Micro Linear Corp., supra note 38.