NOTE: This disposition is non-precedential.

# United States Court of Appeals for the Federal Circuit

---

**STEPHEN E. BYRNE,**
*Plaintiff-Appellant,*

**v.**

**WOOD, HERRON & EVANS, LLP, DAVID S. STALLARD,**
**KEVIN G. ROONEY, THEODORE R. REMAKLUS,**
**P. ANDREW BLATT, AND WAYNE L. JACOBS,**
*Defendants-Appellees.*

---

2011-1012

---

Appeal from the United States District Court for the Eastern District of Kentucky in case no. 08-CV-0102, Judge Danny C. Reeves.

---

Decided: November 18, 2011

---

JAMES A. JABLONSKI, Law Office of James A. Jablonski, of Denver, Colorado, argued for plaintiff-appellant.

J. ROBERT CHAMBERS, Wood, Herron & Evans, L.L.P., of Cincinnati, Ohio, argued for defendants-appellees.

---

Before LOURIE, GAJARSA,[*] and O'MALLEY, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* O'MALLEY. *Circuit Judge* LOURIE joins Sections I, III, and IV of the opinion and concurs only in the result of Section II.

O'MALLEY, *Circuit Judge*.

Stephen Byrne appeals from the district court's grant of summary judgment for Wood, Herron & Evans, LLP, and several lawyers from that law firm (collectively, "WHE"), on Byrne's claim for legal malpractice. The district court granted summary judgment for WHE on the sole ground that Byrne failed to offer technical expert testimony in opposition to WHE's motion for summary judgment, a finding the court made after *sua sponte* striking portions of Byrne's own affidavit relating to technical matters. Although Byrne is the inventor named on the patent at the center of this malpractice action, the court found that Byrne is not a person of ordinary skill in the art and, thus, not qualified to opine on technical aspects of the invention and prior art. Because the district court abused its discretion in striking Byrne's affidavit without identifying the relevant level of skill in the art and without considering that inventors normally possess at least ordinary skill in the field of invention, we *vacate* and *remand* the district court's decision for consideration of the merits of WHE's summary judgment motion.

## I. BACKGROUND

This is a legal malpractice action in which Stephen Byrne alleges that WHE was negligent in failing to secure broader patent protection for his invention, which relates to an improvement to a grass and weed trimmer used in landscaping. Byrne alleges that, as a result of WHE's negligence, he was unsuccessful in a patent infringement lawsuit against Black & Decker Corporation and related entities (collectively, "Black & Decker"). Because the

---

[*] Judge Gajarsa assumed senior status on July 31, 2011.

present appeal involves a narrow procedural issue, we only briefly recite the relevant factual background.

## A. Byrne's Invention

In 1989, Byrne was operating a landscaping company in which workers used flail trimmers, also called string trimmers, to trim around trees and fences and to edge sidewalks and curbs. After complaints about the appearance of lawn-edging work, Byrne developed an improvement to the flail trimmers. Specifically, Byrne's invention was the inclusion of a combined guide and guard mounted on the trimmer near the flail to allow uniform cutting, visually indicate where the flail was cutting, and stabilize the flail. Byrne retained WHE to prepare and prosecute a patent application for his invention, resulting in the issuance of United States Patent No. 5,115,870 ("the '870 patent") on May 26, 1992. Subsequently, Byrne sought and obtained a reissue patent, U.S. Patent No. RE 34,815 ("the '815 patent"), which: (1) expanded the scope of the claims by claiming a flail stabilizing surface; and (2) eliminated the limitation, in some claims of the '870 patent, that the guide rotate.

Claim 24 of the '815 patent is representative of the claims at issue in the underlying infringement action and recites:

> 24. A trimmer for edging grass along a fixed reference surface, said trimmer comprising:
>
> *     *     *     *
>
> a dual function flexible flail trimmer guide and guard means mounted on said trimmer inboard of said flexible flail means for guiding said flexible flail means along said reference surface while shielding a user from debris generated by said flexible flail means,
>
> said guide and guard means having an outer-circumferential edge defined by a circumferential

lip extending radially outwardly therefrom, said circumferential lip having an outer periphery and *a generally planar outboard flail stabilizing surface . . .,* said stabilizing surface being disposed within a path of rotation of said flail means,

wherein said flail means extends radially outwardly from said outer periphery of said circumferential lip as said flail means rotates.

'815 patent col.11 ll.17-40 (emphasis added). The "generally planar" language emphasized above is at the heart of the infringement action and Byrne's legal malpractice claim.

## B.  Underlying Infringement Action

In late 2004, after unsuccessful licensing negotiations, Byrne sued Black & Decker in the United States District Court for the Eastern District of Kentucky, alleging that Black & Decker's sale of a string trimmer containing a U-shaped wire edge guard infringed the '815 patent. *See* Complaint, *Byrne v. Black & Decker Corp.*, Case No. 2:04-cv-262 (E.D. Ky. Dec. 30, 2004), ECF 1. The district court ultimately granted summary judgment of non-infringement to Black & Decker, finding that the U-shaped wire guard did not meet the "generally planar . . . surface" limitation of the '815 patent, a limitation that was present in each of the claims Byrne asserted. *Byrne v. Black & Decker Corp.*, 80 U.S.P.Q.2d 1686, 2006 WL 1117685, *5 (E.D. Ky. Apr. 27, 2006). On appeal, this court affirmed the district court's grant of summary judgment based on a different construction of the "generally planar . . . surface" limitation that is not relevant for purposes of the present appeal. *Byrne v. Black & Decker Corp.*, No. 2006-1523, 2007 WL 1492101 (Fed. Cir. May 21, 2007).

## C.  Current Malpractice Action

On May 14, 2008, Byrne filed a legal malpractice action in Kentucky state court against WHE, which WHE

timely removed to the United States District Court for the Eastern District of Kentucky.[1] *See* Notice of Removal, *Byrne v. Wood, Herron & Evans, LLP*, Case No. 2:08-cv-102 (E.D. Ky. May 30, 2008), ECF 1. Byrne moved to remand the case for lack of subject matter jurisdiction, a motion the district court denied. *See Byrne v. Wood, Herron & Evans, LLP*, 2008 WL 3833699 (E.D. Ky. Aug. 13, 2008). The court found that, although legal malpractice is a state law claim, it requires a "suit within a suit" analysis that turns on substantial questions of patent law, thus giving rise to jurisdiction under 28 U.S.C. § 1338. *Id.* at *4 (citing *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, 504 F.3d 1262, 1269 (Fed. Cir. 2007)). Accordingly, the case proceeded in federal court.

In its report from the parties' Rule 26(f) discovery planning conference, WHE informed the court that it planned to file an early motion for summary judgment and requested that the court stay all discovery. In response to this request, the district court stayed discovery, with the exception of requests for admission and written interrogatories, and noted that WHE would file its summary judgment motion within thirty days. In December 2008, WHE filed a targeted motion for summary judgment, arguing that the undisputed prosecution history of the '815 patent demonstrates that the patent examiner would not have allowed the asserted claims without the "planar" limitation. In addition, WHE argued that Byrne was aware of and affirmatively signed statements authorizing the inclusion of the term "planar" in the patent. WHE did not submit any expert testimony in support of

---

[1] Byrne's original complaint also named another law firm and individual lawyers from that firm as defendants, but he settled his dispute with those defendants, and they have been dismissed from this action. *See* Agreed Partial Entry of Dismissal, *Byrne v. Wood, Herron & Evans, LLP*, Case No. 2:08-cv-102 (E.D. Ky. Sept. 23, 2008), ECF 22.

its motion.

Byrne opposed WHE's motion, arguing that the proper inquiry is not whether the particular patent examiner in this case would have allowed the patent without the "planar" limitation, but whether a hypothetical claim without the "planar" limitation *could* have issued. In support of his opposition, Byrne submitted two affidavits: one from William Kiesel, a patent attorney, and another from Byrne himself. Kiesel's opinion discussed the standard of care for a patent attorney and WHE's alleged negligence, as well as the scope of the prior art Bartholomew patent (U.S. Patent No. 4,091,536), on which the examiner relied in rejecting some of Byrne's original claims. Byrne's affidavit primarily related to the nature of his invention, the scope of the Bartholomew patent, and the novel features of his invention that were independent of the "planar" limitation.

WHE moved to strike portions of both the Kiesel and the Byrne affidavits, arguing that Kiesel was not qualified to provide expert testimony as to the technical aspects of the invention and prior art, and that portions of Byrne's affidavit should be stricken because they contradict the record or are irrelevant. Notably, WHE did not challenge whether Kiesel was qualified to opine on the standard of care for a patent prosecutor, and it did not argue that Byrne was not a person of ordinary skill in the art or otherwise unqualified to offer expert testimony. In response, Byrne argued that the Kiesel and Byrne affidavits complement and rely on each other, such that they "work together as they should, each supporting the other with respect to technical matters and patent matters." Plaintiff's Response to Defendant's Motion to Strike Portions of the Affidavit of William David Kiesel at 2, *Byrne v. Wood, Herron & Evans, LLP*, Case No. 2:08-cv-102 (E.D. Ky. Mar. 9, 2009), ECF 67. As it relates to his own affivadit, Byrne expressly argued that he was a person of at least ordinary skill in the art and qualified to testify as an expert because he was the inventor of the '815 patent, and

because he had substantial experience in the design, manufacture and use of string trimmers.

Initially, the district court granted WHE's motion to strike Kiesel's affidavit, *sua sponte* deciding that Kiesel was "not qualified to provide expert testimony on the issue of legal malpractice in the patent application process." *Byrne v. Wood, Herron & Evans, LLP*, 2009 WL 2382415, at *3 (E.D. Ky. July 30, 2009). It reached this decision despite the fact that Kiesel had worked as a patent attorney for 40 years, written and prosecuted over 500 patent applications, served as an adjunct professor of patent law, and previously prepared expert reports or provided expert testimony on patent-related issues, including in four legal malpractice cases. The court found that, because Kentucky law requires expert testimony on the standard of care in a malpractice action unless it is so obvious as to be familiar to a lay person, Byrne could not defeat summary judgment without such testimony. *Id.* at *2 (citing *Stephens v. Denison*, 150 S.W.3d 80, 82 (Ky. Ct. App. 2004). Accordingly, the court granted summary judgment to WHE. *Id.* at *6. The court also denied WHE's motion to strike Byrne's affidavit as moot. *Id.*

Byrne moved for reconsideration of the court's ruling, citing relevant case law regarding expert testimony and providing a supplemental affidavit from Kiesel. After considering Byrne's new argument and supplemental material, the district court vacated its decision and reconsidered WHE's motion for summary judgment. *Byrne v. Wood, Herron & Evans LLP*, 2010 WL 3394678, at *1 (E.D. Ky. Aug. 26, 2010). In its ultimate decision, the court found that Kiesel was qualified to provide testimony "regarding the standard of care in the patent application process" and struck only the portions of Kiesel's affidavit relating to technical aspects of the Byrne patent and the prior art. *Id.* at *5.

The court, however, *sua sponte* determined that Byrne was not a person of ordinary skill in the art, though it did

so without identifying the requisite level of skill. Based on that conclusion, the court struck the portions of Byrne's affidavit purporting to provide expert testimony, finding that "Byrne provides no information from which the Court could conclude that he is qualified to testify as an expert on this subject." *Id.* at *7. It noted that "[t]he sum of Byrne's qualifications, as set forth in his affidavit, are a bachelor of science degree in an unspecified area of study and experience 'operating a landscaping company that maintained the lawns of apartment complexes and condominiums.'" *Id.* The district court also found that, even if Byrne was a person of ordinary skill in the art, he is not necessarily qualified as an expert. *Id.* (citing *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008)). Once the district court struck the technical aspects of Kiesel's affidavit and excluded Byrne as an expert entirely, Byrne's opposition was devoid of any technical expert testimony. Accordingly, the district court granted Defendants' motion for summary judgment.

Despite previously reconsidering its decision on Kiesel's expert qualifications, the district court warned Byrne "that any request for reconsideration of the Court's ruling on the ground that he had no notice the Court would consider his qualifications as an expert would not be welltaken" because Kentucky law requiring expert testimony is well established. *Id.* at *7 n.7. Byrne nonetheless filed a motion for reconsideration, in which he identified portions of the record on summary judgment demonstrating that he was a person of at least ordinary skill in the relevant art of string trimmers. The court denied his motion the next day in a summary order. Byrne filed a timely notice of appeal. [2]

---

[2] After WHE filed its summary judgment motion, Byrne amended his complaint to add a second claim of legal malpractice arising from the underlying litigation as well as a claim for breach of fiduciary duty. Accordingly, the court treated WHE's motion as a motion for partial summary judgment. Following the district court's order

## II. JURISDICTION

On appeal, Byrne initially argues that this court should narrow its jurisdictional case law by excluding from the scope of 28 U.S.C. § 1338 legal malpractice cases that involve only hypothetical patent claims. In its reply brief, however, he abandons that argument after acknowledging that our case law forecloses it. *See Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355 (Fed. Cir. 2010) (finding jurisdiction over a legal malpractice action involving missed deadlines in which no patent actually issued). Byrne is correct that our case law, as it currently reads, supports the district court's jurisdiction over Byrne's state law malpractice claim and, by extension, our jurisdiction to hear this appeal. Although we must adhere to our precedent, we believe this court should re-evaluate the question of whether jurisdiction exists to entertain a state law malpractice claim involving the validity of a *hypothetical* patent, for the reasons discussed below.

The question of whether 28 U.S.C. § 1338 provides jurisdiction over a claim that on its face arises under state law necessarily requires us to determine whether hearing the case in a federal forum would "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). That balance is less likely to be upset when the case presents a "nearly pure issue of law" rather than one that is "fact-bound and situation-specific," and where resolution of the federal question is "both dispositive of the case and . . . controlling in numerous other cases." *Empire Health-*

---

granting WHE's motion, the parties stipulated to the dismissal of Byrne's remaining claims as well as to the dismissal of WHE's counterclaim to recover approximately $22,000 in unpaid attorneys' fees. *See* Stipulation of Dismissal, *Byrne v. Wood, Herron & Evans, LLP*, Case No. 08-cv-102 (E.D. Ky. Sept. 28, 2010), ECF 93. The dismissal, therefore, resulted in a final judgment of all claims in this action.

*choice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006) (quotation marks and citations omitted). Indeed, it is only the "special and small category" or "slim category" of cases in which a state law cause of action will trigger federal jurisdiction. *Id.* at 699, 701; *see also* R. Fallon, Jr., John F. Manning, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and The Federal System 798-99 (6th ed. 2009) (noting that in only four cases has the Supreme Court upheld jurisdiction under 28 U.S.C. § 1331 in which no federal cause of action is alleged, and examples in lower courts remain infrequent).[3]

Against this backdrop, it is difficult to see the federal interest in determining the validity of a hypothetical patent claim that is ancillary to a state law malpractice action. The outcome of such determinations invariably will rest on case-specific inquiries comparing prior art against patent claims that have not and will never issue. As such, these determinations, which involve only *application* and not *interpretation* of patent law, have little or no bearing on other cases. On the other hand, finding federal jurisdiction over malpractice cases involving questions of hypothetical patent claims opens the federal courthouse to an entire class of actions, thereby usurping state authority over this traditionally state law tort issue. *See Grable*, 545 U.S. at 318 (explaining the concern in

---

[3] Although *Grable* and *Empire Healthchoice* involved federal question jurisdiction under 28 U.S.C. § 1331, the "arising under" language in § 1331 has the same meaning as it does in § 1338. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988). The recent passage of the Leahy-Smith America Invents Act also does not change this analysis because the jurisdictional amendments in that legislation do not alter the "arising under" language that is at the core of this issue. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29 § 19, 125 Stat. 284, 331-32 (2011). The amendments to §§ 1295 and 1338, moreover, do not apply to this particular case because they are effective only for actions commenced on or after the date of enactment. *Id.* at § 19(e).

Supreme Court precedent about attracting "a horde of original filings and removal cases" and "herald[ing] a potentially enormous shift of traditionally state cases into federal courts").

Applying these federalism considerations, several courts either have outright disagreed with our analysis or have found a meaningful distinction when only hypothetical patent rights are at stake. *See, e.g.*, *Genelink Biosciences, Inc. v. Colby*, 722 F. Supp. 2d 592, 598-99 (D.N.J. 2010) (remanding a legal malpractice case for lack of subject matter jurisdiction, finding that "because no patent was issued, no patent rights are at stake, and there are therefore no fears that substantive patent law would [be] altered by inconsistency"); *Roof Technical Servs., Inc. v. Hill*, 679 F. Supp. 2d 749, 754 (N.D. Tex. 2010) (granting a motion to dismiss a legal malpractice case for lack of subject matter jurisdiction and explaining that, "there is a federal interest in the uniform application of patent laws, but that interest is not implicated here, where no patent rights are actually at stake"); *Minton v. Gunn*, 301 S.W.3d 702, 709 (Tex. App. Fort Worth 2009) ("[W]e believe the Federal Circuit misapplied United States Supreme Court precedent by disregarding the federalism analysis that the Supreme Court has applied to restrict the scope of 'arising under' jurisdiction to a 'small and special category' of cases . . . ."), *petition for review granted* (Feb. 8, 2011). In many cases, the procedural posture prevents us from reviewing these decisions, thus allowing courts simply to ignore our law. We address the issues in this appeal, however, because our existing case law compels us to do so.

## III. DISCUSSION

### A. Standard of Review

Byrne challenges the district court's decision to strike portions of his affidavit, which was the sole basis on which the district court granted summary judgment.

Accordingly, this appeal presents a challenge to an evidentiary ruling. "We review evidentiary rulings that are not unique to our jurisdiction under the law of the regional circuit." *Davis*, 596 F.3d at 1362 (Fed. Cir. 2010) (citation omitted). The Sixth Circuit reviews a district court's evidentiary rulings for abuse of discretion. *Id.* (citing *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 980 (6th Cir. 2004)).

## B.  Governing Law

To establish a claim for legal malpractice under Kentucky law, a plaintiff must prove the following: "(1) that there was an employment relationship with the defendant/attorney; (2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney in the same or similar circumstances; and (3) that the attorney's negligence was the proximate cause of damage to the client." *Stephens v. Denison*, 150 S.W.3d 80, 81 (Ky. Ct. App. 2004). A Kentucky state law claim for legal malpractice is decided as a "suit within a suit," that is, "[t]o prove that the negligence of the attorney caused the plaintiff harm, the plaintiff must show that he/she would have fared better in the underlying claim." *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). In the context of a malpractice suit in which a plaintiff alleges that, but for the attorney's negligence, he would have obtained broader patent claims, a plaintiff must show that broader patent claims "would have been held patentable on examination in the [United States Patent and Trademark Office] . . ., in accordance with the criteria of patentability applied during examination." *Davis*, 596 F.3d at 1364.

The general rule in Kentucky regarding expert testimony in malpractice cases is that such testimony is required both to show the applicable duty of care and to show causation. *Stephens* 150 S.W.3d at 81-82; *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. Ct. App. 1965). There is an exception to this rule, which has been extended to

legal malpractice cases, "where the negligence is so apparent that a layperson with general knowledge would have no difficulty recognizing it." *Stephens*, 150 S.W.3d at 81-82.

This court also has explained that only one of ordinary skill in the art who is qualified as a technical expert under Rule 702 of the Federal Rules of Evidence may offer expert testimony on technical matters. *See Sundance*, 550 F.3d at 1363. While a person of ordinary skill in the art does not qualify as an expert automatically, there is also no suggestion that "Rule 702 requires a witness to possess something more than ordinary skill in the art to testify as an expert." *Id.*

## C. Analysis

On appeal, Byrne challenges the determination that he was not one of ordinary skill in the art qualified to offer expert testimony on the technical aspects of his invention and the prior art in the field. He argues that the district court abused its discretion in striking his affidavit primarily because the court made no finding of the level of skill in the art. We agree with Byrne.[4]

---

[4]  As an alternative argument, Byrne contends that WHE's motion for summary judgment did not raise any issues requiring expert testimony, as it was factually-based solely on the prosecution history. Accordingly, Byrne argues that he should not have been required to offer *any* expert testimony in his opposition. While we think Byrne's argument presents a close question, we conclude that WHE's motion did raise the issue of the patentability of a hypothetical patent claim lacking a "planar" limitation, because WHE met its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). WHE's motion recited the relevant prosecution history, including the examiner's rejection of Byrne's claims based on prior art references. It then argued that the record "unequivocally and undisputedly demonstrates that the asserted claims of the '815 patent were *not* patentable over the

The relevant standards used to determine the validity of Byrne's hypothetical patent claim are the criteria applied during examination in the United States Patent and Trademark Office ("PTO"). *Davis*, 596 F.3d at 1364. Pursuant to those standards, a determination about whether a patent is obvious "requires a factual finding of the level of ordinary skill in the art." *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1323 (Fed. Cir. 2011) (citing 35 U.S.C. § 103(a); *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)). The question of anticipation likewise must be viewed from the perspective of one of ordinary skill in the art. *See In re Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990) ("[T]he [anticipating] reference must describe the applicant's claimed invention sufficiently to have placed a person of ordinary skill in the field of the invention in possession of it.").

In the context of an obviousness determination, for example, "a district court's failure to make a correct finding on the level of skill constitutes reversible error" unless it does not affect the ultimate conclusion under § 103. *Innovention*, 637 F.3d at 1323. For example, a district court does not commit reversible error when it applies the lowest level of skill (i.e., a layperson) in finding that an invention would have been obvious, "because what is obvious to a layperson is necessarily obvious to one with a higher level of skill in the field of the inven-

---

prior art *without* the recitation of the planar flail stabilizing surface . . . ." Defendants' Supporting Memorandum at 16, Joint Appendix ("J.A.") 72 (emphasis in original). Although WHE's motion does not contain expert affidavits negating Byrne's claim that his hypothetical patent would have issued, there is no requirement that it do so. *See Celotex*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim") (emphasis in original). Accordingly, WHE's motion sufficiently raised the issue of the patentability of an alternative patent claim, an issue for which Byrne bears the ultimate burden at trial.

tion." *Id.* (citation omitted).  For the same reason, it may be unnecessary to determine the level of skill in the art when the subject matter is "easily understandable." *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed. Cir. 1983).  Thus, there may be situations in which the technology at issue is at such a level that it does not require technical expert testimony, and the failure to identify a level of skill in the art will be harmless.

That is not the situation here.  In this case, the court held that technical expert testimony was required, the very premise of its decision to grant summary judgment to WHE after striking the technical aspects of the Kiesel and Byrne affidavits.  Despite that conclusion, the court did not make any finding as to the level of skill in the art before concluding that Byrne fell *below* that level.  Under the analogous case law described above, the district court's failure to identify the level of skill is not harmless and constitutes an abuse of discretion, particularly given the unique circumstances of this case.

Significantly, Byrne himself was the sole inventor of the patent at issue.  As a general rule, an inventor will be a person of at least ordinary skill in the relevant art, and in many cases the inventor will be one of extraordinary skill in the field of invention.  *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) (referring to the "well-settled understanding that inventors are typically persons skilled in the field of the invention"); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1368 (Fed. Cir. 2002) (explaining that the inventor is "presumably also an artisan of ordinary skill in the art" for purposes of comparing expert testimony); *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985) ("Inventors, as a class, according to the concepts underlying the Constitution and the statutes that have created the patent system, possess something – call it what you will – which sets them apart from the workers of *ordinary* skill . . . ." (emphasis in original)).  Because it

will be the rare case in which an inventor is not one possessing skill in the art, it is especially inappropriate for the district court to strike Byrne's affidavit without going through the exercise of identifying the requisite level of skill.

Second, the technology at issue in this case does not appear to be particularly complex. Although string trimmers generally are motorized, the invention in this case relates to a guard and guide mounted on the trimmer. Indeed, Byrne's affidavit indicates that he first developed his invention by mounting an "electric wok lid" from his house to the shaft of a string trimmer to provide a straight cut. Joint Appendix ("J.A.") 306. Given that, had the district court analyzed the appropriate level of skill in the art, it likely would have concluded that it is low.

Finally, the procedural posture of this case exacerbates the district court's error. Here, WHE never argued that Byrne was not a person of ordinary skill in the art, and the parties did not address the level of skill in the art anywhere in their summary judgment briefing. While Byrne does not argue that a district court may *never* exclude expert testimony *sua sponte*, the district court's decision to do so without any argument or evidence of the level of skill in the art is particularly problematic. In addition, the early stage at which WHE filed its motion, combined with the district court's decision to stay most discovery, further limited the record on this question.

For that reason, WHE's suggestion that it was Byrne's duty to come forward with evidence of the relevant level of skill in this context is disingenuous. Having asked the court to stay discovery to file a targeted motion for summary judgment that *did not* raise the question of Byrne's level of skill in the art, WHE cannot fault Byrne for failing to engage in an analysis regarding that very issue. All of these factors lead us to the conclusion that the district court abused its discretion in striking Byrne's

affidavit.[5]

Relying on our statements in *Sundance*, the district court also noted that, even if Byrne is one of ordinary skill in the art, "this does not necessarily qualify him as an expert." *Byrne*, 2010 WL 3394678, at *7 (citing *Sundance*, 550 F.3d at 1363). Although it is true that possessing ordinary skill in the art does not *automatically* qualify a witness as an expert, there is no indication that any other qualifications are necessary, and "[a] witness possessing merely ordinary skill will often be qualified to present expert testimony both in patent trials and more generally." *Sundance*, 550 F.3d at 1363. The district court did not identify any independent reason why Byrne was not qualified as an expert other than its finding that he lacked skill in the art, and WHE offers no other reason on appeal. Accordingly, we see no basis to conclude that Rule 702 of the Federal Rules of Evidence acts as a separate bar to Byrne's testimony.[6]

---

[5]  Byrne also argues in his reply brief, for the first time, that the district court erred in not considering the technical aspects of Kiesel's affidavit. By not raising this argument in his opening brief, however, Byrne has waived it. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived"). In any event, Byrne's argument is without merit because he relies only on dicta in our *Davis* opinion to argue that a patent attorney is capable of opining on patentability. *Davis*, 596 F.3d at 1364 (suggesting that plaintiff's expert "could have reviewed the prior art references cited in the office actions and discussed their effect on patentability"). In *Davis*, there was no discussion of, or challenge to, the patent attorney's technical expertise. Nor is there any indication that *Davis* displaced the rule in *Sundance* that an expert must be one of ordinary skill in the art to opine on technical matters.

[6]  We do not address whether Byrne is actually one of ordinary skill in the art – i.e., if this is the rare case in which the inventor is not at least of ordinary skill in the field of invention. That is a matter for the district court to determine on remand, after it makes a finding about the

## IV. CONCLUSION

For the reasons stated above, the decision of the district court is *vacated* and *remanded* for further proceedings consistent with this decision.

### COSTS

Costs are awarded to Byrne.

## VACATED AND REMANDED

---

relevant level of skill in the art. In addition, we also do not address the merits of WHE's summary judgment motion, including whether genuine issues of material fact preclude summary judgment or the relevance of the particular examiner's actions in this case.