# United States Court of Appeals for the Federal Circuit

---

**STEPHEN E. BYRNE,**
*Plaintiff-Appellant,*

v.

**WOOD, HERRON & EVANS, LLP,
DAVID S. STALLARD, KEVIN G. ROONEY,
THEODORE R. REMAKLUS, P. ANDREW BLATT,
AND WAYNE L. JACOBS,**
*Defendants-Appellees.*

---

2011-1012

---

Appeal from the United States District Court for the Eastern District of Kentucky in case no. 08-CV-0102, Judge Danny C. Reeves.

---

## ON PETITION FOR REHEARING EN BANC

---

JAMES A. JABLONSKI, Law Office of James A. Jablonski, of Denver, Colorado, filed a petition for rehearing en banc for plaintiff-appellant.

J. ROBERT CHAMBERS, Wood, Herron & Evans, L.L.P., of Cincinnati, Ohio, filed a response to the petition for defendants-appellees.

---

Before RADER, *Chief Judge*, NEWMAN, LOURIE, BRYSON, GAJARSA,[*] LINN, DYK, PROST, MOORE, O'MALLEY, REYNA, and WALLACH, *Circuit Judges*.

PER CURIAM.

DYK, *Circuit Judge*, with whom NEWMAN and LOURIE, *Circuit Judges*, join, concurs in the denial of the petition for rehearing en banc.

O'MALLEY, *Circuit Judge*, with whom WALLACH, *Circuit Judge*, joins, dissents from the denial of the petition for rehearing en banc.

## O R D E R

A petition for rehearing en banc was filed by Plaintiff-Appellant, and a response thereto was invited by the court and filed by Defendants-Appellees. The petition for rehearing was referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc and the response were referred to the circuit judges who are authorized to request a poll of whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition of Plaintiff-Appellant for panel rehearing is denied.

(2) The petition of Plaintiff-Appellant for rehearing en banc is denied.

(3) The mandate of the court will issue on March 29, 2012.

---

[*] Judge Gajarsa participated in the decision for panel rehearing.

FOR THE COURT

March  22, 2012                    /s/ Jan Horbaly
     Date                          Jan Horbaly
                                   Clerk

# United States Court of Appeals for the Federal Circuit

---

**STEPHEN E. BYRNE,**
*Plaintiff-Appellant,*

**v.**

**WOOD, HERRON & EVANS, LLP,**
**DAVID S. STALLARD,**
**KEVIN G. ROONEY, THEODORE R. REMAKLUS,**
**P. ANDREW BLATT, AND WAYNE L. JACOBS,**
*Defendants-Appellees.*

---

2011-1012

---

Appeal from the United States District Court for the Eastern District of Kentucky in case no. 08-CV-0102, Judge Danny C. Reeves.

DYK, *Circuit Judge*, with whom NEWMAN and LOURIE, *Circuit Judges*, join, concurring in the denial of the petition for rehearing en banc.

---

Under the Supreme Court's decision in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809 (1988), federal jurisdiction under 28 U.S.C. § 1338 exists if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." We have followed *Christianson* in

subsequent cases involving legal malpractice, holding that federal jurisdiction exists, for example, "when the adjudication of the malpractice claim requires the court to address the merits of the plaintiff's underlying patent infringement lawsuit," *Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.*, 631 F.3d 1367, 1371 (Fed. Cir. 2011), and when a "claim drafting error is a necessary element of the malpractice cause of action," *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1285 (Fed. Cir. 2007). In so holding, we have recognized the strong federal interest in patent law uniformity as manifested by Congress's decision to give exclusive jurisdiction to the federal district courts and on appeal to this court. *See Immunocept*, 504 F.3d at 1285-86; *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1272 (Fed. Cir. 2007); *see also USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 284 (5th Cir. 2011). All of the malpractice cases that we have held are within the scope of section 1338 as pleaded have required the resolution of substantive patent law issues.[1] The

---

[1] *See, e.g., Warrior Sports*, 631 F.3d at 1372 ("[T]o prove the proximate cause and injury elements of its tort claim, Michigan law requires [plaintiff] to show that it would have prevailed on its infringement claim . . . ."); *Carter v. ALK Holdings, Inc.*, 605 F.3d 1319, 1325 (Fed. Cir. 2010) ("[T]he determination of [the patent attorney's] compliance with the MPEP and the CFR is a necessary element of [plaintiff's] malpractice cause of action . . . ."); *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355, 1360 (Fed. Cir. 2010) ("[Plaintiff] can prevail only by proving that U.S. patents would have issued on her applications but for Defendants' malpractice—i.e., that her inventions were patentable under U.S. law."); *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1413 (Fed. Cir. 2009) ("[Plaintiff] will be required to show that, had appellees not omitted a portion of the source code from its application, the resulting U.S. patent would not have been held invalid."); *Immunocept*, 504 F.3d at 1285 ("[T]here is no

existence of these issues necessarily makes the issues "substantial" within the meaning of *Christianson*, 486 U.S. at 809, and indicates a "serious federal interest" in federal adjudication within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 313 (2005).

Judge O'Malley's dissent, in arguing that section 1338 does not confer jurisdiction over malpractice claims dependent on federal patent law, minimizes the substantial federal interest in federal adjudication of the patent law issues in these cases. Patent-related malpractice claims necessarily involve attorney conduct before the U.S. Patent and Trademark Office ("PTO") or before the federal courts (because of our exclusive jurisdiction), and there is a substantial federal interest in ensuring that federal patent law questions are correctly and uniformly resolved in determining the standards for attorney conduct in these proceedings, even when the patent law issue is case-specific.[2]  *See generally Grable*, 545 U.S. 308. Indeed, attorney conduct in patent cases is implicated by the patent law itself, such as by the doctrine of inequitable conduct, the exceptional-case statute, and the statutory provisions authorizing regulation of PTO practice. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc) (noting that an attorney's submissions to the PTO may be a basis for an

---

way [plaintiff] can prevail without addressing claim scope."); *Air Measurement Techs.*, 504 F.3d at 1269 ("[T]he district court will have to adjudicate, hypothetically, the merits of the infringement claim.").

[2]   In contrast, trademark-related malpractice claims such as those at issue in *Singh v. Duane Morris LLP*, 538 F.3d 334 (5th Cir. 2008), can involve conduct before the state courts. The Fifth Circuit specifically noted that the federal interest in patent cases is thus more substantial than in trademark cases. *Id.* at 340.

inequitable conduct finding); *Brooks Furniture Mfg., Inc. v. Dutalier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (noting that attorney misconduct may be a predicate for an exceptional case finding under 35 U.S.C. § 285); *Carter v. ALK Holdings, Inc.*, 605 F.3d 1319, 1324 (Fed. Cir. 2010) ("The standards for practice before the PTO are governed by federal law . . . ."). So too all federal patent rights are created by actions of a federal agency, the PTO. *See Grable*, 545 U.S. at 315 ("The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action . . . .").

State court decisions imposing attorney discipline for conduct before the PTO and in federal patent litigation based on an incorrect interpretation of patent law are almost certain to result in differing standards for attorney conduct and to impair the patent bar's ability to properly represent clients in proceedings before the PTO and in the federal courts. Denying federal jurisdiction over these cases would allow different states to reach different conclusions as to the requirements for federal patent law in the context of state malpractice proceedings. There is a substantial federal interest in preventing state courts from imposing incorrect patent law standards for proceedings that will exclusively occur before the PTO and the federal courts. To be sure, with some exceptions,[3] state law governing attorney malpractice is not preempted by federal law. *See Kroll v. Finnerty*, 242 F.3d 1359, 1366 (Fed. Cir. 2001). But this hardly lessens the significant federal interest in the correct and uniform interpretation of federal patent law in the course of such state malpractice proceedings. That important interest supports recog-

---

[3] *See Sperry v. Fla. ex rel Fla. Bar*, 373 U.S. 379, 385 (1963) (holding that Florida could not exercise "a virtual power of review" over PTO practice by prohibiting nonlawyers from engaging in patent practice).

nizing federal jurisdiction where the outcome of the proceeding depends on an interpretation of federal patent law, and demonstrates that such adjudication does not upset the federal-state balance. *See Christianson*, 486 U.S. at 809.

I see no reason to revisit this court's repeated holdings that where the outcome of malpractice cases turns on federal patent law, federal jurisdiction exists.

# United States Court of Appeals
# for the Federal Circuit

---

**STEPHEN E. BYRNE,**
*Plaintiff-Appellant,*

**v.**

**WOOD, HERRON & EVANS, LLP,
DAVID S. STALLARD, KEVIN G. ROONEY,
THEODORE R. REMAKLUS, P. ANDREW BLATT,
AND WAYNE L. JACOBS,**
*Defendants-Appellees.*

---

2011-1012

---

Appeal from the United States District Court for the Eastern District of Kentucky in case no. 08-CV-0102, Judge Danny C. Reeves.

O'MALLEY, *Circuit Judge*, with whom WALLACH, *Circuit Judge,* joins, dissenting from the denial of the petition for rehearing en banc.

---

It is time we stop exercising jurisdiction over state law malpractice claims. I dissent from the court's refusal to consider this matter *en banc* so that the case law through which we have expanded the scope of our jurisdiction to these purely state law matters can be reconsidered and revamped.

This court has justified expanding the reach of our jurisdiction to cover state law malpractice claims by reading *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988), to authorize our doing so. Specifically, our case law concludes that, whenever a patent law issue is raised in the context of a state law claim and must be resolved in the course of that otherwise state law inquiry, federal jurisdiction will lie, as will exclusive appellate jurisdiction in this court. That reading of *Christianson* is wrong, however. Supreme Court precedent permits federal courts to exercise federal question jurisdiction over state law claims *only* in the rare case where a federal issue is "actually disputed and substantial," and where doing so will not upset "any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Rather, courts must undertake a four-step inquiry as to whether: (1) a federal issue is a necessary element of a state law claim; (2) a federal issue is actually disputed; (3) a federal issue is substantial; and (4) exercising federal jurisdiction will disturb the balance of federal and state judicial responsibilities. *Grable*, 545 U.S. at 314. In choosing to exercise jurisdiction over malpractice claims arising out of patent matters, we have ignored the latter two parts of the inquiry.

Even if *Christianson*'s directives were once ambiguous, subsequent Supreme Court case law has clarified the test in a way that leaves no doubt that our narrow reading of *Christianson* can no longer be justified. As discussed below, proper application of Supreme Court precedent demands that we decline to exercise jurisdiction

over this and similar state law malpractice actions. Rather than force the Supreme Court to correct our jurisdictional mistakes, we should take this opportunity to do so ourselves.

## I.

Stephen Byrne originally brought this action in the Circuit Court of Kenton County, Kentucky, asserting a state law claim for legal malpractice based on defendants' representation of Byrne in prosecuting a patent for a lawn care device. The gist of Byrne's malpractice case is that defendants negligently failed to secure broader patent protection for his invention from the United States Patent and Trademark Office ("PTO"), and, as a result, Byrne was unsuccessful in a subsequent patent infringement lawsuit against Black & Decker Corporation and related entities (collectively, "Black & Decker"). *See Byrne v. Black & Decker Corp.*, 2007 WL 1492101 (Fed. Cir. May 21, 2007). All agree that Byrne's claim is a purely state law claim for which federal law creates no cause of action.

Defendants removed the action to the United States District Court for the Eastern District of Kentucky, asserting jurisdiction under 28 U.S.C. § 1338, on grounds that Byrne's claim required resolution of an issue of patent law. Notice of Removal, *Byrne v. Wood, Herron & Evans, LLP*, No. 2:08-cv-102 (E.D. Ky. May 30, 2008), ECF No. 1. Specifically, defendants argued that, to prevail on his state law claim, Byrne would have to establish that he likely would have succeeded in a hypothetical infringement action based on the broader patent he says his counsel should have sought from the PTO. When Byrne moved to remand the action to state court, the district court denied the motion, relying on Federal Circuit case law to find that federal jurisdiction was proper under § 1338. *See Byrne v. Wood, Herron & Evans, LLP*,

2008 WL 3833699, at *4 (E.D. Ky. Aug. 13, 2008) (citing *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, 504 F.3d 1262, 1269 (Fed. Cir. 2007)). Accordingly, the case proceeded in federal court.

On appeal to this court, a majority of the panel agreed that our current case law extended § 1338 jurisdiction over this action but noted that, because it is inconsistent with Supreme Court precedent, that case law should be revisited. *See Byrne v. Wood, Herron & Evans, LLP*, 2011 WL 5600640, at *5 (Fed. Cir. Nov. 18, 2011) ("Although we must adhere to our precedent, we believe this court should re-evaluate the question of whether jurisdiction exists to entertain a state law malpractice claim involving the validity of a *hypothetical* patent . . . ." (emphasis in original)). The panel then reluctantly resolved the merits of the appeal, and this petition for rehearing *en banc* followed.

## II.

This court has exclusive jurisdiction over appeals from district court decisions "if the jurisdiction of that court was based, in whole or in part, on § 1338." 28 U.S.C. § 1295(a)(1) (2007). In turn, § 1338 provides in relevant part that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a) (2007). Because the "arising under" language of § 1338 mirrors that of the general federal question jurisdiction statute, 28 U.S.C. § 1331, the Supreme Court has "grafted § 1331 precedent onto its § 1338 analysis." *Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.*, 599 F.3d 1277, 1282 (Fed. Cir. 2010) (citing *Christianson*, 486 U.S. at 808-09).

Accordingly, consistent with decisions applying § 1331, the Supreme Court has outlined a two-prong test,

in which district court jurisdiction under § 1338(a) extends "only to those cases in which a well-pleaded complaint establishes either [1] that federal patent law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson*, 486 U.S. at 808-09 (citations omitted).  It is the second prong of the *Christianson* test that is at issue here, as it is in all state law malpractice actions, because no one contends that federal patent law creates Byrne's cause of action.[1]

---

[1]    The Leahy–Smith America Invents Act amended §§ 1295 and 1338, but those amendments do not apply here because they are effective only for actions commenced on or after the date of its enactment, which postdates the initiation of the present litigation.  *See* Leahy–Smith America Invents Act, Pub. L. No. 112–29, Sec. 19, 125 Stat. 284, 331–32 (2011) ("AIA").  Even if applicable, those changes would not affect this analysis because the amendments did not alter the key "arising under" language in § 1338.  Indeed, Congress expressly decided not to alter the first sentence of § 1338 when it passed the AIA, as the Federal Circuit Bar had proposed it do, precisely so as to avoid "unsettling the law in ways that no one can fully anticipate."  H.R. Rep. No. 109-407, at 6 (2006) (quoting the testimony of Professor Arthur Hellman).  The AIA's legislative history makes clear that Congress did not intend to affect the second prong of the *Christianson* doctrine, which relates to the jurisdictional question at issue in this case – i.e., where a state law claim involves issues of patent law.  *See "Holmes Group," the Federal Circuit, and the State of Patent Appeals: Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Property of the House Comm. on the Judiciary*, 109th Cong., 1st Sess., 40 (Serial No. 109-7) (Mar. 17, 2005) (statement of Professor Arthur Hellman) (explaining that the second prong of the *Christianson* doctrine would continue to be applicable to limit federal court

"[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow*, 478 U.S. at 808.[2] The second prong of *Christianson* derives from the Supreme Court's recognition that federal jurisdiction also may lie in limited circumstances where state law creates the cause of action but the action turns on construction of federal law. *Merrell Dow*, 478 U.S. at 808-09 (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983)). The Court has advised that this alternative basis for jurisdiction "must be read with caution" because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.* at 809-10. Because of the sensitive nature of the inquiry, the analysis requires "prudence and restraint." *Id.* at 810 (citing *Franchise Tax Bd.*, 463 U.S. at 20).

---

jurisdiction, under the version of the AIA adopted by Congress).

[2] Indeed, nearly a century ago in a case involving a patent issue, Justice Oliver Wendell Holmes, Jr. articulated a rule that would have excluded cases falling under the second prong of the *Christianson* test from federal court review, stating that "[a] suit arises under the law that creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). Thus, in that case, a claim for libel based on allegedly false statements that the plaintiff's product infringed the defendant's patent was found not to invoke federal question jurisdiction. *Id.* at 259-60. The Court reasoned that, "[t]he fact that the justification [for the allegedly libelous statements] may involve the validity and infringement of a patent is no more material to the question under what law the suit is brought than it would be in an action of contract." *Id.* at 260.

The Supreme Court focused on these federalism concerns, and incorporated them into any jurisdictional inquiry taken under the second prong of *Christianson*, when it decided *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 313-14 (2005). In *Grable*, the Court explained that the exercise of federal jurisdiction is "subject to a possible veto," even where a state law claim contains a contested and substantial federal question, if exercising jurisdiction is not "consistent with congressional judgment about the sound division of labor between state and federal courts." *Grable*, 545 U.S. at 313-14. Accordingly, the Court articulated the test as follows: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

The facts of *Grable* are instructive for understanding the parameters of the test it announced. In *Grable*, the Court considered whether a state law claim to quiet title that depended on an interpretation of a federal tax code provision properly invoked federal question jurisdiction. *Id.* at 310-11. In that case, the Internal Revenue Service ("IRS") seized Grable & Sons Metal Products, Inc.'s real property to satisfy a federal tax deficiency. *Id.* When the IRS later sold the seized property to Darue Engineering & Manufacturing, Grable sued Darue in state court to quiet title, alleging that the IRS's seizure notice was invalid because it did not comply with 26 U.S.C. § 6335(a). *Id.* at 311. The sole and dispositive issue in the case, therefore, was the interpretation of § 6335(a), specifically whether that statute required notice of seizure to be served personally, or whether service by certified mail was sufficient. Under the facts of that case, the Court concluded that the federalism balance weighed in favor of federal

jurisdiction because "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id.* at 315. It reasoned that "[t]he Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters." *Id.* at 315. The *Grable* Court emphasized, moreover, that "it will be the rare state title case that raises a contested matter of federal law," such that the effect on the federal-state balance will be only "microscopic." *Id.*

One year later, the Supreme Court made clear that, to the extent *Grable* authorizes the exercise of jurisdiction in cases where federal law does not directly create the cause of action, it is to be read narrowly. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006). In *Empire Healthchoice*, the Court concluded that federal question jurisdiction does not exist over a health insurance carrier's claim for reimbursement of insurance benefits, even where the carrier administered a plan for federal employees under a federal statute, and the federal statute included a clause preempting state law on issues relating to "coverage of benefits." *Id.* at 682-83. In doing so, the Court characterized *Grable* as carving out a "special and small category" of cases and found that the facts of *Empire Healthchoice* were "poles apart" from *Grable*. *Id.* at 699-700. The Court identified several factors that led the *Grable* Court to find federal question jurisdiction: (1) the dispute in that case centered on the action of a federal agency and its compliance with a federal statute; (2) the federal question was "substantial"; (3) resolution of the federal question was dispositive of the case; and (4) resolution of the federal question "would be controlling in numerous other cases." *Id.* at 700. The Court also high-

lighted that *Grable* presented a "nearly 'pure issue of law,'" unlike the "fact-bound and situation-specific" claim at issue in the case before it. *Id.* at 701 (quoting R. Fallon, D. Meltzer & D. Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 65 (5th ed. 2003) (5th ed. Supp. 2005)). Because those factors were not present in *Empire Healthchoice*, the Court concluded that the case "cannot be squeezed into the slim category *Grable* exemplifies." *Id.*

III.

A.

Even before *Grable* added an express federalism "veto" to the federal question analysis, courts widely understood that a state law tort claim, including one for legal malpractice, did not "arise under" federal law simply because the underlying subject matter of the alleged tort was federal in nature. *E.g.*, *Diaz v. Sheppard*, 85 F.3d 1502 (11th Cir. 1996) (finding no federal jurisdiction over a prisoner's malpractice action alleging that his attorney, in an action under 42 U.S.C. § 1983, misunderstood the scope of the Eighth Amendment to the U.S. Constitution); *Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996) (finding no federal jurisdiction over an action against an attorney based on his allegedly negligent conduct in representing an employee benefit plan regulated by the Employee Retirement Income Security Act ("ERISA")); *Berg v. Leason*, 32 F.3d 422 (9th Cir. 1994) (finding no jurisdiction over a malicious prosecution claim, where the allegedly unlawful prosecution was for violations of federal securities law and the Racketeering Influenced and Corrupt Organizations ("RICO") Act).

Notably, before the Federal Circuit addressed this issue in 2007, the result was no different for state law malpractice claims involving an underlying patent prose-

cution or litigation matter. *E.g.*, *Adamasu v. Gifford, Krass, Groh, Sprinkle, Anderson & Citkowski, P.C.*, 409 F. Supp. 2d 788 (E.D. Mich. 2005) (remanding a legal malpractice claim alleging negligent patent prosecution); *New Tek Mfg., Inc. v. Beehner*, 702 N.W.2d 336 (Neb. 2005) ("*New Tek I*") (finding that state court jurisdiction is proper over a malpractice claim in which the plaintiff would have to prove, under its properly construed patent claims, that it would have prevailed in a patent infringement action).[3]  As one court noted, "[s]imply because the defendants rendered advice on a matter governed by federal law and prosecuted a patent through a federal agency does not constitute an issue that 'arises under any Act of Congress relating to patents,' as 28 U.S.C. § 1338 requires." *Adamasu*, 409 F. Supp. 2d at 792.

---

[3]  *See also IMT, Inc. v. Haynes & Boone, L.L.P.*, 1999 WL 58838 (N.D. Tex. Feb. 1, 1999) (remanding a legal malpractice claim to state court where the plaintiff alleged that its attorney's negligence in filing a continuation-in-part patent application instead of a new patent application raised questions about the patent's validity and enforceability); *Commonwealth Film Processing, Inc. v. Moss & Rocovich, P.C.*, 778 F. Supp. 283 (W.D. Va. 1991) (remanding malpractice action based on an attorney's alleged lack of patent knowledge); *Minatronics Corp. v. Buchanan Ingersoll P.C.*, 28 Pa. D. & C.4th 214 (Pa. Comm. Pl. 1996) (finding no jurisdiction over a claim for malpractice based on a missed patent application filing deadline, even though the court would have to determine whether a patent would have issued); *Fotodyne, Inc. v. Barry*, 449 N.W.2d 337 (Wis. Ct. App. Sept. 26, 1989) (unpublished) (finding that state court jurisdiction is proper in a malpractice action based on an attorney's failure to notify his client that the PTO had rejected his patent application).

B.

In 2007, the Federal Circuit weighed in on this issue in what one commentator has described as a "substantial shift in the view of whether federal or state courts have jurisdiction over patent-related legal malpractice claims." Robert W. Hesselbacher, Jr., *Which Court Decides? Legal Malpractice Claims Arising from Patents*, 51 No. 5 DRIFTD 32 (May 2009). In that year, a single panel of this court issued two decisions on the same day that, according to the panel, resolved an "issue of first impression" – i.e., whether § 1338 jurisdiction exists where a legal malpractice claim requires resolution of an underlying question of patent law. *See Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007) ("*AMT*"); *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed. Cir. 2007).

Since 2007, this court has issued three more precedential decisions applying *AMT* and *Immunocept* to other malpractice claims involving an underlying patent prosecution or litigation error. *See Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.*, 631 F.3d 1367 (Fed. Cir. 2011) (vacating district court's order remanding a malpractice claim alleging patent prosecution errors); *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355 (Fed. Cir. 2010) (finding § 1338 jurisdiction over a malpractice claim based on an attorney's failure to file timely patent applications); *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed. Cir. 2009) (finding that the plaintiff's malpractice claims alleging patent prosecution errors arose under federal law). Through these cases, we have gone so far as to extend § 1338 jurisdiction to cases in which no patent has issued and no actual patent rights are at stake. *See Davis*, 596 F.3d at 1361-62 (extending jurisdiction where the plaintiff would have to prove that, but for her attor-

ney's missed patent application filing deadline, her invention *would have been patentable*).[4]

---

[4]  The panel majority in the present matter emphasized that cases involving only a hypothetical patent clearly do not implicate a substantial federal interest. *See Byrne v. Wood, Herron & Evans*, LLP, 2011 WL 5600640, at *5 (Fed. Cir. Nov. 18, 2011) ("[W]e believe this court should re-evaluate the question of whether jurisdiction exists to entertain a state law malpractice claim involving the validity of a *hypothetical* patent . . . ." (emphasis in original)).  Other courts have articulated the same point. *E.g.*, *Roof Technical Servs., Inc. v. Hill*, 679 F. Supp. 2d 749, 753 (N.D. Tex. 2010) (Explaining that, "there is a federal interest in the uniform application of patent laws, but that interest is not implicated here, where no patent rights are actually at stake"); *Genelink Biosciences, Inc. v. Colby*, 722 F. Supp. 2d 592, 598-99 (D.N.J. 2010) (Finding that "because no patent was issued, no patent rights are at stake, and there are therefore no fears that substantive patent law would [be] altered by inconsistency").  Such cases present the most clear-cut situation in which federal question jurisdiction is not appropriate because they have *zero* potential impact on the validity or enforceability of an issued patent.  But that should not suggest that malpractice cases in which the underlying actions involved issued patents properly belong in federal court.  In virtually every patent-related malpractice action that requires a "case within a case" analysis, there will be a hypothetical patent issue raised – i.e., in a world where no malpractice occurred, would the patentee have fared better, for example, in its patent application or infringement suit?  In that sense, the patent issue in any malpractice action will involve only an academic inquiry into what likely would have happened absent the attorney negligence, and the answer will affect only the result of the state law claim, not the rights or scope of any live patent.

C.

Federal Circuit case law on this issue has been out of step with that of other federal and state courts. In post-*Grable* cases involving state law tort claims that involve any federal law other than patent law, courts correctly follow a restrictive approach to federal question jurisdiction in finding that such cases belong in state court. Indeed, even where state law claims involve federal law questions over which federal courts have exclusive jurisdiction (e.g., Sherman Act, copyright), other areas of § 1338 jurisdiction (e.g., trademark, copyright), areas that are uniquely federal in nature (e.g., federal criminal law, federal tax code, aviation standards), or more garden-variety federal issues (e.g., Title VII, Age Discrimination in Employment Act ("ADEA")), courts consistently find that such claims do not invoke federal court jurisdiction. *E.g.*, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290 (11th Cir. 2008) (claims of negligence and defamation requiring interpretation of the legality of gun sales under federal criminal gun statutes); *Singh v. Duane Morris LLP*, 538 F.3d 334 (5th Cir. 2008) (trademark malpractice claims) [5]; *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007) (en banc) (claims for breach of contract and fraud that required interpretation of

---

[5] Although another panel on that circuit recently distinguished *Singh* from a case involving a fraud claim relating to a failed patent application, it did so in a conclusory analysis based almost wholly on our case law. *See USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 281-82 (5th Cir. 2011). The Fifth Circuit's analysis in *USPPS* is erroneous for the same reasons our case law is incorrect. The *USPPS* case also demonstrates that our case law continues to upset the federalism balance by extending federal question jurisdiction to cases even beyond those asserting traditional malpractice claims.

federal tax code provision); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907 (7th Cir. 2007) (negligence and other claims relating to activity governed by federal aviation law).[6]

## D.

The analyses in the other circuit and district court decisions have focused on two aspects of the *Grable* test to find that federal jurisdiction is lacking, namely that: (1) the federal issue, even if present and disputed, is not "substantial"; and (2) exercising jurisdiction would upend the appropriate federal-state division of judicial labor. As explained below, this court's erroneous approach to both of those considerations has caused it to extend its jurisdiction improperly to patent-related malpractice claims.

---

[6] *See also RX.com, Inc. v. O'Quinn*, 766 F. Supp. 2d 790 (S.D. Tex. 2011) (malpractice based on underlying antitrust lawsuit under the Sherman Act); *Mr. Bar-B-Q, Inc. v. Natter & Natter*, 2011 WL 2015574 (S.D.N.Y. May 18, 2011) (trademark malpractice claims); *Steele v. Salb*, 681 F. Supp. 2d 34 (D.D.C. 2010) (malpractice based on underlying Title VII action); *Paulet v. Farlie, Turner & Co., LLC*, 2010 WL 2232662 (S.D. Fla. June 2, 2010) (whistleblower claim that required a determination of whether actions constituted copyright infringement); *Anderson v. Johnson*, 2009 WL 2244622 (N.D. Ill. July 27, 2009) (malpractice claim based on underlying copyright infringement action); *Higbee v. Malleris*, 470 F. Supp. 2d 845 (N.D. Ill. 2007) (malpractice based on underlying Title VII and ADEA action). *But see Katz v. Holland & Knight LLP*, 2009 WL 367204 (E.D. Va. Feb. 12, 2009) (relying on our case law to find federal jurisdiction over claims for fraud and breach of fiduciary duty, where the plaintiff alleged that attorneys misrepresented the strength of a copyright claim).

1.

As to substantiality of the federal issue, the Supreme Court, and regional circuit courts applying Supreme Court decisions, have identified certain considerations that affect whether a federal issue is "substantial": (1) if the issue is a "pure question of law," rather than one that is "fact-bound and situation-specific"; (2) the federal government's interest in the issue, including whether it implicates a federal agency's ability to vindicate its rights in a federal forum and whether resolution of the issue would be controlling in numerous other cases; and (3) if resolution of the federal issue is dispositive of the case at hand. *Empire Healthchoice*, 547 U.S. at 700-01 (analyzing *Grable*, 545 U.S. at 313); *Adventure Outdoors*, 552 F.3d at 1299-1301; *Mikulski*, 501 F.3d at 570. Application of these considerations to patent-related malpractice actions, including the present case, reveals that the patent issues arising in such cases are not "substantial."

First, none of the patent-related malpractice cases over which we have found § 1338 jurisdiction involved pure questions of law; rather, they required only fact-specific applications of patent laws to the circumstances of each case. In *AMT*, for example, we explained that "the district court will have to adjudicate, hypothetically, the merits of the infringement claim." *AMT*, 504 F.3d at 1269. The "patent issue" we identified, therefore, required the district court to consider only the hypothetical question of infringement under the facts of that particular case. The question of patent infringement, moreover, is a question of fact. *E.g., Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-30 (Fed. Cir. 2011).

Even where courts must consider whether, absent a claim drafting or prosecution error, a valid patent would have issued, the only question is whether a different

patent could have issued *under the particular circumstances of that case.* Those cases, therefore, do not require courts to interpret or consider the "meaning" of a patent statute, as opposed to merely applying the patent laws to the facts of a particular case. In undertaking that task, state courts and regional circuit courts, of course, can rely on and apply the body of patent law the Federal Circuit has developed. *See Tafflin v. Levitt*, 493 U.S. 455, 465 (1990) (finding that state courts applying RICO statutes will be "guided by federal court interpretations of the relevant federal criminal statutes, just as federal courts sitting in diversity are guided by state court interpretations of state law"); *Adventure Outdoors*, 552 F.3d at 1300 (same); *Mikulski*, 501 F.3d at 560 ("We are mindful that state courts are generally presumed competent to interpret and apply federal law." (citation omitted)).

In short, the patent-related malpractice claims over which we have extended our jurisdictional reach require only application of patent laws to the facts of a case, and they do not implicate the "validity, construction, or effect" of the patent laws. *Grable*, 545 U.S. at 313 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)). In other words, "[w]hat the Court said about *Grable* in *Empire Healthchoice* can be said here too. We have a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law." *Bennett*, 484 F.3d at 910. Accordingly, these malpractice cases present questions that are nothing like the pure interpretation of the federal tax code provision at issue in *Grable*.

Second, although the federal government has an interest in the uniformity of patent law, state court adjudication of patent-related malpractice actions does not pose a serious threat to that interest. Most of the recent malpractice cases on this court's docket turn on state law

matters such as statutes of limitations, statutes of repose, or evidentiary issues. *E.g.*, *Memorylink Corp. v. Motorola, Inc.*, Case No. 1:09-cv-7401 (N.D. Ill. Aug. 5, 2010), ECF No. 75 (granting motion to dismiss malpractice claim as barred by the Illinois statutes of limitations and repose), *aff'd*, 2011 WL 6095502 (Fed. Cir. Dec. 8, 2011); *Byrne v. Wood, Herron & Evans, LLP*, 2011 WL 5600640, at *5 (Fed. Cir. Nov. 18, 2011) (finding that district court abused its discretion in excluding expert testimony under Kentucky law); *USPPS, Ltd. v. Avery Dennison Corp.*, 2010 WL 2802529 (W.D. Tex. June 4, 2010) (finding that fraud and breach of fiduciary duty claims are barred by the statute of limitations under Texas law), *appeal docketed*, No. 2011-1525 (Fed. Cir. Aug. 15, 2011). Even where a state court would be required to opine on issues of patent law, its decisions would have no precedential effect on federal case law. *See Adventure Outdoors*, 552 F.3d at 1301 ("[T]he state court interpretation of the gun statutes will not be controlling in numerous other cases because it will not have precedential effect in the federal system"). Further, patent-related malpractice claims do not implicate any underlying patent rights themselves, and instead require consideration of patent law only to inform the state law standards of causation or damages. For example, a state court's determination that a plaintiff would have succeeded on his infringement claim is only relevant to whether the plaintiff can establish causation for purposes of his malpractice claim; it does not result in an adjudication that the defendant in the prior action was an infringer.

Unlike in *Grable*, these cases also do not present situations that require courts to determine whether an action of a federal agency complied with a federal statute. *Empire Healthchoice*, 547 U.S. at 700 (explaining that *Grable* "centered on the action of a federal agency (IRS)

and its compatibility with a federal statute"). These are actions between two private parties, and the federal government's interest in uniformity of patent laws does not extend to a civil dispute between a client and his lawyer over the adequacy of the lawyer's representation. *See Singh*, 538 F.3d at 339 ("It cannot be said that federal trademark law evinces any substantial federal interest in regulating attorney malpractice."); *Mikulski*, 501 F.3d at 570 ("While the federal government may have an interest in the uniform application of regulations that relate to the collection of taxes, it has only a limited interest in private tort or contract litigation over the private duties involved in that collection.").

Allowing state courts to resolve malpractice actions, moreover, does not restrict the ability of any federal agency to vindicate its rights in a federal forum. Unlike in *Grable*, which recognized the government's strong interest in "the ability of the IRS to satisfy its claims from the property of delinquents," 545 U.S. at 315, state court adjudication of patent-related malpractice claims does not impair the PTO's ability to operate. For example, if a state court finds that, but for an attorney's claim-drafting error, a patent likely *would* have issued, that determination does not sidestep the PTO's examination process and result in a duly issued patent. It merely supports the causation element of the plaintiff's malpractice claim. That is far different from *Grable*, where a state court would be deciding whether the IRS's seizure notice was effective based on its interpretation of the federal tax code provision at issue.

Finally, resolution of the patent issue in these malpractice actions will not be dispositive. The patent issues in these cases relate to the causation or damages element of the plaintiff's state law claim; state law generally requires malpractice plaintiffs also to prove breach – i.e.,

that the defendant attorney breached a duty of care to the plaintiff or did not exercise the ordinary care of a reasonably competent attorney. Thus, in this case for example, if Byrne can prove that a broader patent *could* have issued, Kentucky law still requires him to prove that his attorneys, in acquiescing to the examiner's requirement to add to a claim limitation, neglected their duty to exercise the ordinary care of a reasonably competent attorney. *Stephens v. Denison*, 150 S.W.3d 80, 81 (Ky. Ct. App. 2004). The fact that the patent issue in a malpractice action is not the sole, dispositive issue in the case strongly cuts against the conclusion that it is a "substantial" one. *See, e.g., Franchise Tax Bd.*, 463 U.S. at 26 (explaining that, if "there are many reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks," then the claim does not "arise under" those laws. (footnote omitted)).

Despite the many factors that militate against finding that a patent law issue in a malpractice case is not "substantial," our case law has given the question of substantiality only cursory consideration. In our seminal decision on this issue, the panel in *AMT* found that the issue of hypothetical patent infringement was "substantial" merely because it was a necessary element of the plaintiff's malpractice claim. *AMT*, 504 F.3d at 1269 ("[P]atent infringement is a 'necessary element' of AMT's malpractice claim and therefore apparently presents a substantial question of patent law conferring § 1338 jurisdiction." (citing *Christianson*, 486 U.S. at 809)). In other words, the panel equated substantiality with whether the federal issue would actually need to be resolved in the context of the state law claim. As the discussion above demonstrates, the analysis in *AMT* is not only incomplete, it is incorrect.

By finding that whenever a federal issue is a necessary element of a plaintiff's state law claim, the federal issue automatically is a substantial one, our case law has collapsed the inquiry and discarded substantiality as a separate consideration.   But that is contrary to *Christianson*, as clarified in *Grable*, which expressly requires that a federal issue be both necessary *and* substantial.   *See Grable*, 545 U.S. at 314 ("It has in fact become a constant refrain in such cases that federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."); *Merrell Dow*, 478 U.S. at 810 ("[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."); *Adventure Outdoors*, 552 F.3d at 1299 ("Although the plaintiffs' complaint raises a contested federal issue, the nature of the dispute between the parties suggests that this issue does not meet *Grable*'s substantiality requirement."); *Mikulski*, 501 F.3d 572-73 (6th Cir. 2007) (finding no jurisdiction, even where the federal issue was a necessary element and actually disputed, because the federal issue was not "substantial").   Because this court's analysis is erroneous, and because the patent issues in patent-related malpractice actions are not "substantial," § 1338 jurisdiction does not extend to such cases.   For that reason alone, our case law holding otherwise should be overruled.

2.

Our case law conflicts with Supreme Court precedent in another way as well.   As noted above, *Grable* also requires courts to consider whether a state law claim is one "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."   *Grable*, 545 U.S. at

314. Thus, even if a patent issue is substantial and disputed, § 1338 jurisdiction will not lie if federal jurisdiction would upset the federal-state division of judicial labor. *Id.* at 313-14. Exercising § 1338 jurisdiction over patent-related malpractice claims fails this analysis.

As the Fifth Circuit noted in *Singh*, the argument for extending federal jurisdiction over malpractice claims involving a federal issue "reaches so broadly that it would sweep innumerable state-law malpractice claims into federal court." 538 F.3d at 340. Because all malpractice plaintiffs must prove that they would have prevailed in the prior suits, or otherwise would have achieved a better outcome, "federal jurisdiction could extend to every instance in which a lawyer commits alleged malpractice during the litigation of a federal claim." *Id.* Such a result violates *Grable*'s federalism concerns, and there is no reason why the same analysis should not apply to malpractice actions in which the underlying federal claim involves patent law.

By contrast, however, in *AMT* we reasoned that "we would consider it illogical for the Western District of Texas to have jurisdiction under § 1338 to hear the underlying infringement suit and for us then to determine that the same court does not have jurisdiction under § 1338 to hear the same substantial patent question in the 'case within a case' context of a state malpractice claim." *AMT*, 504 F.3d at 1269. But that is precisely the logic that would sweep into the federal courts *every* case in which an allegation of malpractice stemmed from an underlying federal matter. Such an approach directly conflicts with what *Grable* contemplated – the "rare" state law claim that invokes federal jurisdiction and has only "a microscopic effect on the federal-state division of labor." *Grable*, 545 U.S. at 314. It is also inconsistent with the view that such cases are the "special and small category"

of cases where federal jurisdiction over a state law cause of action is appropriate. *Empire Healthchoice*, 547 U.S. at 699.

Indeed, in only the little more than four years since we decided *AMT* and *Immunocept*, this court's docket of patent-related malpractice cases, or the equivalent cases involving attorney fraud or breach of fiduciary duty, demonstrates that these are not the "rare" or "special and small category" of cases. In addition to the five decisions identified above, including *AMT* and *Immunocept*, this court heard argument in four more similar cases, including the present case, since May 2011 alone.[7] *See Byrne v.*

---

[7] There are also more patent-related malpractice cases that do not reach this court either because a state court has disagreed with our analysis, thus preventing the matter from entering the federal court system, or because district courts – somewhat brazenly perhaps – have chosen not to follow our analysis in a removed action, resulting in remand orders that we lack jurisdiction to review. *See New Tek Mfg., Inc. v. Beehner*, 751 N.W.2d 135, 144 (Neb. 2008) ("*New Tek II*") (refusing to reconsider its prior finding that state court jurisdiction was proper, even in light of our *AMT* and *Immunocept* decisions); *Genelink Biosciences, Inc. v. Colby*, 722 F. Supp. 2d 592, 598-99 (D.N.J. 2010) (remanding a patent-related legal malpractice case for lack of subject matter jurisdiction); *ARC Prods., L.L.C. v. Kelly*, 2010 WL 4363427, at *2 (E.D. Mo. Oct. 27, 2010) (acknowledging our cases but siding with a contrary district court decision in deciding to remand a patent malpractice action). We have noted the awkward situation this court faces when it receives appeals over which it lacks jurisdiction but which clearly are contrary to the court's case law. *See, e.g., Genelink BioSciences, Inc. v. Colby*, 423 Fed. Appx. 977, 978 (Fed. Cir. May 25, 2011) ("While the District of New Jersey's jurisdictional determination appears contrary to this court's precedent, it does not follow that this court has authority to grant Colby's requested relief."); *ARC Products, L.L.C. v. Kelly*, 424 Fed. Appx. 944, 945 (Fed.

*Wood, Herron & Evans, LLP*, 2011 WL 5600640 (Fed. Cir. Nov. 18, 2011); *Minkin v. Gibbons, P.C.*, 2010 WL 5419004 (D.N.J. Dec. 23, 2010), *appeal docketed*, No. 2011-1178 (Fed. Cir. Jan. 24, 2011); *Memorylink Corp. v. Motorola*, 2011 WL 6095502 (Fed. Cir. Dec. 8, 2011); *USPPS, Ltd. v. Avery Dennison Corp.*, 2010 WL 2802529 (W.D. Tex. June 4, 2010), *appeal docketed*, No. 2011-1525 (Fed. Cir. Aug. 15, 2011). This trend will only increase, as the number of patent-related malpractice cases is on the rise. *See* Christopher G. Wilson, *Embedded Federal Questions, Exclusive Jurisdiction, and Patent-Based Malpractice Claims*, 51 WM. & MARY L. REV. 1237, 1240 (2009) ("[A]ggrieved clients are bringing more claims against patent attorneys" (citing Am. Bar Ass'n Standing Comm. on Lawyers' Prof'l Liab., Profile of Legal Malpractice Claims 2004-2007, at 4 tbl. 1 (2008)). Accordingly, far from having a "microscopic effect" on the federal-state division of judicial labor, we have appropriated authority over an entire of class of state law claims that traditionally belong in state court.

Because our circuit is an outlier, moreover, our case law produces the odd result that malpractice claims stemming from an underlying federal suit will only belong in federal court when the federal issue is one of patent law. That result is peculiar because states undoubtedly have a strong interest and role in regulating the conduct of *all* of their respective attorneys, as well as in protecting *all* of their residents from negligent legal services. *E.g.*, *Custer*, 89 F.3d at 1167 ("[T]he law governing legal malpractice represents a traditional exercise of state author-

---

Cir. May 25, 2011) ("This court has recently issued decisions that appear to directly undermine the district court's jurisdictional determination . . . . Nonetheless, we agree with ARC that this court is precluded from exercising jurisdiction over the district court's remand order.").

ity."); *cf. Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982) (in determining that federal courts should abstain from interfering in state bar disciplinary proceedings, finding that "[t]he State of New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses."). But we have usurped the states' role when those attorneys happen to practice patent law, or when residents of the state happen to seek legal counsel for a patent law issue. That result is not tenable under any application of the *Grable* test, and there is nothing in our decisions that justifies it.

When we addressed *Grable*'s federalism concerns, the panel in *AMT* engaged in only a short analysis, noting simply that "[t]here is a strong federal interest in the adjudication of patent infringement claims in federal court because patents are issued by a federal agency," litigants will benefit from federal judges who have patent experience, and "[i]n § 1338, Congress considered the federal state-division of labor and struck a balance in favor of this court's entertaining patent infringement." *AMT*, 504 F.3d at 1272. There are several problems with the *AMT* panel's reasoning. While it is true that there is a strong federal interest in the adjudication of "patent infringement" in federal court, and that Congress intended that this court would entertain "patent infringement" actions, we are dealing with state law tort claims, not patent infringement actions. State courts addressing the traditional state law domain of attorney malpractice only will need to consider patent law issues to the extent necessary to determine whether a tort plaintiff has shown causation or established a right to damages. Indeed, within the context of a state law malpractice claim, any question that ostensibly involves application of patent law would be a factual question, left to the fact-finder to

decide based on the testimony of competing experts, who could opine on whether a judgment of infringement would have been likely, a hypothetical patent would have issued, or a defense of inequitable conduct might have succeeded. That is like any other malpractice case, where experts are called upon to opine on whether a plaintiff would have fared better if the defendant exercised greater care.

The *AMT* panel's analysis of the federalism issue is also so basic that it would apply to every underlying federal issue. In any matter involving a federal issue, there will always be some federal interest in having the matter proceed in federal court, and litigants will always benefit to some degree from having the judges in those courts hear the matter. But we must be mindful of the fact that the patent issues in these cases are only incidental to the state law tort claim, and that states have at least an equally strong interest in adjudicating allegations of attorney negligence. Accordingly, simply reciting a federal interest in patent law uniformity is not enough. Three justices of the Texas Supreme Court, in dissent, recently criticized this court's federalism analysis on these very grounds, expressing the view that, "[u]nfortunately, the Federal Circuit has not remained faithful to the Supreme Court's federalism inquiry in the context of malpractice decisions arising from patent cases," and that, "under the Federal Circuit's approach, the federalism element is simply an invocation of the need for uniformity in patent law." *Minton v. Gunn*, 355 S.W.3d 634, 652 (Tex. 2011) (Guzman, J., dissenting).

Allowing state courts to decide patent-related malpractice claims simply does not pose a threat to the uniformity of patent law. State court decisions addressing patent law issues in the context of a state law tort claim would have no precedential effect on federal courts. *See Tafflin v. Levitt*, 493 U.S. at 465 (finding that concurrent

state court jurisdiction over RICO claims will not affect the uniformity of the federal law, because federal courts "would not be bound by state court interpretations of the federal offenses constituting RICO's predicate acts"); *Adventure Outdoors*, 552 F.3d at 1301 ("state court interpretation of the gun statutes . . . will not have precedential effect in the federal system." (citing *Tafflin*)). In addition, the Supreme Court retains ultimate review of state court actions, which further mitigates any such concern. *See Merrell Dow*, 478 U.S. at 815 ("Petitioner's concern about the uniformity of interpretation, moreover, is considerably mitigated by the fact that, even if there is no original district court jurisdiction for these kinds of action, this Court retains power to review the decision of a federal issue in a state cause of action.").

Practical experience confirms this point. For example, in *New Tek I* and *New Tek II*, the Nebraska state courts disagreed with our jurisdictional analysis and ably resolved a patent-related malpractice action that required application of patent laws. *See New Tek I*, 702 N.W.2d 336 (Neb. 2005); *New Tek II*, 751 N.W.2d 135 (Neb. 2008). That case required the court to construe the claims of an expired patent, consider the chances of success in an infringement action, and resolve an issue relating to prosecution history estoppel. The state court relied on and applied the body of patent law this court has developed to resolve the issues before it, and it addressed the patent issues to the extent necessary to adjudicate the plaintiff's malpractice claim. Not surprisingly, in the seven years since *New Tek I* issued, no federal court has cited the *New Tek* decisions for any patent law proposition, or for anything other than the jurisdictional question I now address. In short, although a state court in Nebraska held a *Markman* hearing to construe the claims of

an expired patent, the uniform nature of federal patent law has remained intact.

Ultimately, even if it was unclear in 2007 that our case law would sweep an entire class of state law malpractice actions into federal court, our recent experience renders no doubt about that point. And extending jurisdiction over these cases has done little, if anything, to promote uniformity in patent law. More often, these malpractice cases require this court to resolve nuanced state law issues regarding statutes of limitations or causation. There is no principled reason why state courts cannot apply federal patent law to resolve factual issues relating to causation or damages in state law tort claims, or why such an application poses any threat to this court's interpretation of those laws. In short, there can be little doubt that extending § 1338 jurisdiction over patent-related malpractice claims violates *Grable*'s federalism concerns.

## IV.

Finally, although other courts have begun either to follow our case law in addressing patent-related state law claims, or have distinguished our decisions on the grounds that patent law is unusual, we should not be misled into believing that those cases endorse our analysis. Rather, they reflect the deference other courts give to the Federal Circuit on patent law issues based on our unique appellate jurisdiction.[8] Unfortunately, those decisions also

---

[8] Actually, in many instances, they simply reflect an effort to distinguish our cases – using our experience in patent matters as a facile way to explain away circuit case law that is inconsistent with applicable, governing standards. *E.g.*, *Adventure Outdoors*, 552 F.3d at 1290 (distinguishing *AMT* as "best understood in the context of patent law . . . ."); *Steele*, 681 F. Supp. 2d at 37 (distinguishing the "uniquely federal nature of federal patent

have the consequence of confusing what would otherwise be a fairly uniform approach among the state and federal courts. Our case law has poisoned the well, and it will only serve to exacerbate the federalism concerns identified in *Grable* by drawing more and more state law claims into federal court. As the three dissenting Texas Supreme Court justices noted in *Minton v. Gunn*, "the reach of the Federal Circuit's section 1338 reasoning is uncabined, and can potentially sweep any state law case that touches on substantive patent law (or, for that matter, the other areas of law covered by section 1338, such as copyright and trademarks) irrevocably into federal court." 355 S.W.3d at 653.

Today, we have missed an important opportunity to correct our case law and to acknowledge that our reading of *Christianson*, even if once arguably justified, can no longer be so.

---

law" from the "garden variety federal law" of Title VII); *Anderson*, 2009 WL 2244622, at *3 (explaining that "[f]ederal courts are viewed as having developed a special competency in matters of patent law").